459 So.2d 390 (1984)
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, Appellant,
v.
Frank A. Caluwe, Jr., and Unemployment Appeals Commission, Appellees.
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, Appellant,
v.
Frank A. Caluwe, Jr., Appellee.
Frank A. Caluwe, Jr., Appellant,
v.
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, Appellee.
Nos. 83-705, 83-780 and 83-1910.
District Court of Appeal of Florida, Fourth District.
November 7, 1984.
Rehearing Denied December 19, 1984.
*391 Robert L. Norton and Michael Mattimore of Hogg, Allen, Ryce, Norton & Blue, P.A., Coral Gables, and Stanley J. Niego, West Palm Beach, for South Florida Water Management District.
Raymond A. Rea, Boynton Beach, for Frank A. Caluwe, Jr.
John P. Booth, Tallahassee, for Unemployment Appeals Commission.
HURLEY, Judge.
The termination of Frank A. Caluwe, Jr.'s employment with the South Florida Water Management District (District) engendered three appeals which have been consolidated on the court's own motion. The first appeal, brought by Mr. Caluwe, challenges the District's order that he is not entitled to reinstatement or back pay. The second and third appeals, initiated by the District, contest two orders. The first, issued by the Unemployment Appeals Commission, holds that Mr. Caluwe is entitled to unemployment benefits. The second order, entered by the Division of Administrative Hearings, holds that the District's Corrective Action Policy (Policy) is an invalid rule because it was not promulgated in compliance with section 120.54, Florida Statutes (1983). Upon reviewing these consolidated appeals, we conclude that Mr. Caluwe is entitled to be made whole, i.e., he is entitled to reinstatement, unemployment compensation benefits and back pay as discussed hereafter.

I
The District initiated a corrective action policy in 1981. Basically, it lists measures (corrective actions) which the District can take to resolve employee performance problems. It divides disciplinary offenses into four categories with specific penalties for each offense. For example, "failure to follow authorized instructions" is listed as a category # 2 offense and carries a penalty of 25 points for six months. Another provision indicates that "[a] total of 100 points in effect may be cause for termination." The District implemented this policy without following the formal rulemaking procedures of section 120.54, Florida Statutes (1983).
Frank A. Caluwe, Jr., worked for the District from 1974 until 1982. From '74 to '81, his work was marked by accomplishment and promotion. Job performance reports characterized his work as "excellent" and "well organized" and indicated that he had "a very good handle on all phases of the work." With this background, Mr. Caluwe was promoted to a supervisory position. In 1981, however, the picture began to change; controversy and antagonism became dominant themes. Caluwe was demoted to a staff position and, more and more, found himself in an adversarial position with his supervisors. For example, Caluwe asked to see certain documents regarding the District's insurance program. When refused, he invoked the state's public records law and stated that "[i]f ... unable to inspect these documents ... I will have no alternative then [sic] force compliance with the public records law through other means." His supervisor responded that *392 Caluwe was guilty of "poor and inappropriate employee performance... ." Without addressing the critical issue of whether the documents were in fact public records and, therefore, available to any member of the public, the supervisor chastised Caluwe, stating that his request was "inappropriate and represented a misuse of (Caluwe's) position ... and misuse of the District's paid for equipment (typing, paper, etc.) and secretary." The record does not disclose how this dispute was resolved. Nonetheless, it exemplifies the polarization that developed between Caluwe and his employers.
A memorandum dated July 30, 1982, informed Caluwe that he had accumulated 125 disciplinary points and therefore was being discharged. The memorandum expressly referred to the District's corrective action policy which provides that a total of 100 points may be cause for termination. Caluwe's 125 points were broken down as follows: (1) 25 points for "uncooperativeness shown a co-worker," and "failure to respond to a request for information from a member of the public" arising out of an incident occurring on March 17, 1982, and (2) 100 points for writing a letter dated July 21, 1982, to members of the District's Governing Board.[1] The latter 100 points were subdivided as follows: (a) 25 points for using abusive language towards co-workers (referring to his immediate supervisor, Charles Allen Hall, and the department head, Richard A. Rogers); (b) 50 points for using abusive or threatening language to the public or co-workers (referring to members of the District's Governing Board who were the recipients of the letter), and (c) 25 points for failing to follow promulgated grievance and complaint procedures.[2] The memorandum, authored by department director Richard Rogers, generally concluded:
[I] am terminating you because you have accumulated 125 disciplinary points since March 19, 1982; you have made untrue allegations of misconduct which have substantially interfered with my ability to work with you; and your actions have made it impossible to transfer you to another department.
Mr. Caluwe contends that he was in fact fired for "whistle-blowing." More specifically, he maintains that his discharge was primarily a retaliatory gesture for two earlier letters which he sent to the Board notifying them of graft and corruption committed by District employees.[3] Caluwe asserts that his final letter of July 21st is nothing more than a display of frustration due to the Board's failure to respond to his earlier communications.

II
After a formal review hearing held at Mr. Caluwe's request pursuant to section *393 120.57(1), Florida Statutes (1983), a hearing officer decided that only 25 disciplinary points were validly assessed against Caluwe, and therefore recommended that he be reinstated with back pay. Findings of fact made by the hearing officer in support of his determination are set forth in pertinent part as follows:
7. On March 17, 1982, an annual agency meeting was held at which time the agency executive director spoke to all employees. Prior to that time an undated memorandum was posted on the agency's bulletin board "urging" all employees to attend. Another memorandum dated March 1, 1982, which rescheduled the meeting to another date, simply advised members of Caluwe's department when the talk was to be held, but made no mention regarding attendance. Caluwe did not attend the meeting because he did not consider it to be mandatory. He based this conclusion upon the fact that the memorandum urged vis a vis [sic] required attendance, and because other employees had missed the meeting in prior years. He conceded, however that it was "implied" from the memorandum that he attend the meeting. Respondent construed the memorandum to mean that attendance was compulsory, and that "everybody (was) expected to attend." Whether this specific meaning was ever conveyed to all employees, including Caluwe, before the meeting was not disclosed.
During the annual agency meeting Caluwe remained working in his office. While there, an unidentified member of the public approached a temporary receptionist seeking information concerning a problem. The receptionist in turn went to Caluwe seeking his aid in responding to the inquiry. Caluwe responded, "I don't know. That's not my job. Pat Gleason's group handles that." Out of "curiosity", the receptionist reported his comments to a department head, who in turn told Rogers. Neither the receptionist nor the member of the public were identified, and neither appeared and testified at the final hearing. Whether or not the receptionist suffered "abuse" as a result of this as the agency claims was not confirmed.
Rogers, Hall and Caluwe met on March 18 concerning his absence from the annual meeting and the "incident" with the receptionist. On March 22 Caluwe was given a written warning and assigned 25 disciplinary points for being guilty of a Category 2e offense under the agency's written code of conduct for employees. A 2e offense is defined therein as a "(f)ailure to follow authorized instructions." In conjunction with the written warning, Caluwe was also given a memorandum prepared by Rogers on March 19 which explained in greater detail the conduct that precipitated the disciplinary action. In the memorandum Rogers referred to a number of things which prompted the disciplinary action, including the "incident" with the receptionist, the missed meeting, and Caluwe's apparent use of the telephone for personal use during the meeting as reported by the temporary receptionist. However, since the 25 points were given to Caluwe for failing to follow authorized instructions, it is found that disciplinary action was taken because he failed to attend the annual meeting.
8. On March 29, 1982, Caluwe wrote a fourteen-page letter to Rogers giving his version of what occurred on March 17, and explaining in great detail other "incidents" that had occurred during the preceding eighteen months. Attached to the letter were 23 exhibits. Among other things, Caluwe accused Hall and Rogers of "improper conduct and abuse of authority" in handling the other incidents that had previously arisen. He also criticized their ability to manage and communicate with employees. The letter indicated that copies of the same were being mailed to each member of the agency's governing board, its Executive Director, Deputy Director, and Records Clerk, and an outside attorney. Rogers accepted the letter as merely being a response to *394 his memorandum of March 19. Caluwe was not disciplined for this action.
In his conclusions of law, the hearing officer stated that the 25 point assessment for the incident on March 17th could not be upheld. In addition to pleading and other technical deficiencies, the hearing officer centered his attention on the lack of proof. Specifically, he noted that the co-worker and member of the public involved in the incident were never identified and did not testify. Moreover, the District failed to present evidence that Caluwe possessed the requested information or was in a position to obtain it. Finally, the hearing officer found that Caluwe's uncontradicted testimony adequately explained his conduct and refuted the allegations.
Turning to the "100 point letter" of July 21, 1982, the hearing officer concluded that only 25 disciplinary points could validly be assessed against Caluwe. The hearing officer conceded that the letter contained "inflammatory, threatening and abusive language," but nevertheless set aside the 25 points assessed for abusive language toward Caluwe's co-workers, Messrs. Hall and Rogers, because the letter was not addressed to them, nor did it make any reference to them. Insofar as using abusive or threatening language toward the members of the Governing Board, the hearing officer concluded that 50 disciplinary points were improperly assessed because the term "public" as contained in the corrective action policy does not encompass the members of the District's Governing Board. Since the 50 points were set aside, it is reasonable to conclude that the hearing officer did not believe that the members of the Governing Board could be deemed "co-workers" for purposes of the alleged policy infraction. The hearing officer did, however, uphold 25 points based on the fact that Caluwe sent a complaint directly to the Governing Board instead of filing it with the Employees Relation Committee as required by promulgated grievance and complaint procedures. The hearing officer found that this omission amounted to a failure to "follow any authorized instruction."
Based on the foregoing, the hearing officer recommended that Caluwe be reinstated with full back pay because only 25 points could validly be assessed against him. In his analysis, the hearing officer correctly observed that the agency bore the burden of proving a legitimate basis for terminating Mr. Caluwe, see Florida Department of Health and Rehabilitative Services v. Career Service Commission, 289 So.2d 412 (Fla. 4th DCA 1974), and that the agency was limited to offering evidence only of those offenses charged in the termination memorandum of July 30, 1982.[4]See Department of Natural Resources v. Sheffield, 420 So.2d 892 (Fla. 1st DCA 1982).
Upon review, the Governing Board of the District modified, rejected and adopted various fact findings of the hearing officer and concluded that all 125 disciplinary points had been properly assessed against Caluwe. In accordance with the modified fact findings, the District's Governing Board rejected the hearing officer's recommendations and held that Mr. Caluwe is not entitled to reinstatement or back pay.

III
We begin by noting that the District was without power to reject or modify the hearing officer's findings of fact unless it first determined that the findings were not based on competent, substantial evidence, or that the proceedings in which the findings were based did not comply with the essential requirements of law. § 120.57(1)(b)9, Fla. Stat. (1983). Furthermore, the District was not free to reweigh the evidence presented at the hearing, but rather *395 was limited to determining whether some competent substantial evidence was presented which would support the hearing officer's conclusions. See Feldman v. Department of Transportation, 389 So.2d 692 (Fla. 4th DCA 1980). The District's responsibility in this regard cannot be avoided by merely labeling contrary findings "conclusions of law." Leapley v. Board of Regents, Florida State University System, 423 So.2d 431 (Fla. 1st DCA 1982). Yet this is precisely what the District did in order to arrive at its conclusion that 125 points were validly assessed against Mr. Caluwe.
First, dealing with the 100-point letter of July 21st, the District re-imposed the 25 point assessment for using abusive language towards co-workers Hall and Rogers, presumably on ground that the reference to "poor management" in the letter amounted to an implicit reference to them when read with the knowledge that Hall and Rogers were Caluwe's supervisors.[5] This substituted fact finding, thinly disguised as a conclusion of law, was wholly improper. See Leapley, supra. The hearing officer found that the July 21st letter was not abusive toward Rogers and Hall because they were not identified therein, and the letter was not sent to them. Since the record discloses no legitimate basis for the District's rejection of this finding of fact, we reverse its assessment of 25 points on this charge.
We further hold that the District erred by re-imposing 25 points for the March 17th incident. The District's action in this regard flies in the face of other findings of fact made by the hearing officer which were inexplicably omitted from the District's order. The hearing officer specifically found that 25 points were erroneously assessed here on two grounds: (1) the charges in the termination notice were untimely, and (2) in any case, Mr. Caluwe adequately explained his behavior and this testimony was not refuted by the District. Although the hearing officer included these points in his conclusions of law, we believe that the essentially factual nature of his analysis is controlling. The hearing officer's finding on this issue reflects his assessment of the weight and credibility of the testimony and thus lies in the realm of factual matters on which the agency may not rightfully claim special insight. See Leapley, supra at 432, citing McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
In disregarding the hearing officer's finding about the March 17th incident, the District abandoned its duty to state with particularity the reasons for modification or rejection of findings of fact. See § 120.57(1)(b)9; Moore v. Florida Construction Industry Licensing Board, 356 So.2d 19 (Fla. 4th DCA 1978). Moreover, the record does not show that the hearing officer's finding was in fact unsupported by competent, substantial evidence. The District cites to no evidence showing that attendance at the meeting was mandatory and that Caluwe was aware of it, nor does it cite to any evidence tending to show that Caluwe possessed the information requested by the unidentified member of the public. Thus, even setting aside the timeliness issue, we hold that the District improperly rejected the hearing officer's findings of fact concerning the March 17th incident and, therefore, we reinstate the hearing officer's conclusion that 25 points were erroneously assessed.
However, we affirm the District's assessment of 75 points. The hearing officer found that the July 21st letter included "inflammatory, abusive and threatening language" toward members of the board, yet concluded that no points could be assessed for that conduct on the theory that *396 Board members do not fall in the category of either "co-workers" or "the public." The District, however, concluded that Board members are necessarily either co-workers or members of the public vis-a-vis Mr. Caluwe, and therefore reaffirmed the 50-point assessment. We believe the District acted within its authority by so concluding, because the hearing officer's resolution of this definitional issue essentially involved a legal determination which is not entitled to great deference. Furthermore, we cannot say that the District's construction of its policy is wholly unreasonable and, therefore, we are not free to disturb its interpretation. Cf. Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983). We also affirm the assessment of 25 points based on Caluwe's failure to use promulgated grievance and complaint procedures.
To summarize then, we find that only 75 points were properly assessed. Accordingly, we reverse the District's order insofar as it upholds the termination of Mr. Caluwe based on his accumulation of 125 disciplinary points. Further, we hold that Mr. Caluwe is entitled to reinstatement and back pay.[6]

IV
The District argues in the alternative that the discharge can be justified on non-policy grounds. In support of this position, it cites Jacker v. School Board of Dade County, 426 So.2d 1149 (Fla. 3d DCA 1983), which held that the right of a public employer to discipline an employee for "proper cause" under section 447.209, Florida Statutes (1979), includes the right to discipline for failure to show proper respect to the employer, even in the absence of a specific rule of conduct requiring employees to show respect. The court in Jacker explained that a requirement of respect is inherent in the employment relationship "as a matter of common sense if not [of] common law," and on that basis upheld the dismissal of an employee who made disparaging racial remarks about his supervisor.
In this case, the District argues that Caluwe's termination may be upheld under the authority of Jacker because Caluwe was given notice of both Policy and non-Policy grounds for his discharge. In this regard, it points to the general conclusory paragraph in the termination memorandum of July 30, 1982, wherein Mr. Rogers stated that Mr. Caluwe was being terminated because of his accumulation of 125 disciplinary points, because his untrue allegations of misconduct substantially interfere with his ability to work with him, and because his "actions" have made transfer to another department impossible.
We recognize that the inflammatory language in the July 21st letter is grossly disrespectful, such that it might justify discharge in the absence of a specific rule infraction under the authority of Jacker. However, we do not believe Jacker is applicable here because the District itself determined that Caluwe's action did not warrant discharge.
The District adopted a disciplinary code that categorized certain offenses as worthy of discharge (category # 4 offenses) and other offenses as warranting less severe treatment. The District assessed Caluwe's behavior as qualifying for the category # 3, non-discharge correction. Under the District's own assessment of Caluwe's behavior, discharge is unwarranted.
In effect, the District asks this court to uphold its code in assessing points against Caluwe, yet ignore the code's classification of Caluwe's behavior as undeserving of discharge. It would be incongruous to allow the District to invoke Jacker in contradiction of the District's own assessment of the appropriate sanction for Caluwe's behavior. Therefore, we hold *397 that Mr. Caluwe's discharge cannot be justified on grounds of gross disrespect under Jacker.

V
In view of our conclusion that Mr. Caluwe was not fired for proper cause and is thus entitled to reinstatement and back pay, we necessarily find that he did not engage in "misconduct connected with his work" which would disqualify him for unemployment benefits under section 443.101, Florida Statutes (1983). We therefore affirm the Order of the Unemployment Appeals Commission holding that Caluwe is entitled to benefits. We note, however, that our mandate today is not intended to effect a double recovery: The amount of back-pay which the District owes to Mr. Caluwe shall be offset by the amount of the unemployment benefits already received by him. See Columbia County Board of Public Instruction v. Public Employees Relations Commission, 353 So.2d 127, 131 (Fla. 1st DCA 1977).

VI
Finally, we turn to what might be characterized as Mr. Caluwe's peremptory attack on the termination proceedings. He argues that the District's corrective action policy is a "rule" within the meaning of section 120.52(15), Florida Statutes (1983). Further, he asserts that the rule/policy is invalid because it was not promulgated in accordance with section 120.54. Consequently, he contends that the termination order must be reversed because one who is discharged pursuant to the operation of an invalid rule is not terminated for proper cause within the meaning of section 447.209, Florida Statutes (1983). Cf. State v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977).
The District concedes that its Policy was not adopted in compliance with the procedural requirements of section 120.54, but nevertheless argues that the Policy is valid because it falls within the internal memoranda exception of section 120.52(15)(a),[7] or alternatively, because the District has elected to defend the policy on an ad hoc basis in disciplinary proceedings held pursuant to section 120.57, citing Florida Cities Water Co. v. Florida Public Service Commission, 384 So.2d 1280 (Fla. 1980); McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). We find it unnecessary to decide whether the Policy is a "rule" for purposes of section 120.52(15)[8] because even if the District is correct in its assertion that its policy is valid, we would reach the same result on ground that the District's Governing Board erred by upholding the assessment of 125 points against Mr. Caluwe based on its modified fact findings. As we have noted, only 75 points were properly assessed. Thus, even assuming the validity of the Policy, the discharge of Mr. Caluwe cannot be sustained pursuant thereto because disciplinary action is not appropriate under the terms of the policy itself until 100 points are accumulated.
Accordingly, the orders on appeal are
*398 REVERSED IN PART and AFFIRMED IN PART.
LETTS, J., and VOCELLE, L.B., Associate Judge, concur.
NOTES
[1] The full text of that letter provides:

To members of the Governing Board of the South Florida Water Management District: You are to be congratulated for your unity in not addressing controversial topics. It's an unfortunate situation when special interests are put ahead of the public trust that has been vested in you.
The only reasonable conclusion that I can reach is that you condone poor management and theft. Perhaps some of you have committed acts similar to these and that's why you cannot afford to get involved. Well you are involved! It's satisfying to note the courts have held directors personally liable in civil actions and that penalties are not limited to compensatory damages but that punitive damages can be assessed. It's also interesting to note that you may be found culpably negligent in permitting acts like these to occur. Since you have been unwilling to do your own house cleaning, I have decided to help you in this matter. I think it would be an excellent idea if the citizens of South Florida had an opportunity to see how the South Florida Water Management District has acted in favoring special interests. When this happens you will not honestly be able to say, "we didn't know".
 Yours truly,
 Frank A. Caluwe, Jr.
cc: R. Jones, Records Management

[2] The propriety of imposing multiple point assessments for a single act was not challenged on appeal. Thus, we do not express an opinion on this practice.
[3] Mr. Caluwe states, and the District does not dispute, that two of the individuals named have since been found guilty of the charges he levied against them by the Commission on Ethics.
[4] We note, however, that the hearing officer erroneously relied on Bowling v. Department of Insurance, 394 So.2d 165 (Fla. 1st DCA 1981) as authority for applying an elevated standard of proof. As we have previously held, the preponderance of the evidence is the standard to apply in review of the sufficiency of evidence proffered to support a state agency's discharge of an employee. Fla. Dept. of Health and Rehabilitative Services v. Career Service Commission, 289 So.2d 412 (Fla. 4th DCA 1974).
[5] The precise text of the Board's finding here is difficult to follow:

[W]e conclude that the letter's reference to "poor management," read with the knowledge that Hall and Rogers represented the Petitioner's managers and that Petitioner's August, 1981 (Res. Ex. 7, attached Exhibit 21) and March (Res. Ex. 7) letters to Rogers specifically complained of "poor management," were abusive to Rogers and to Hall. Therefore, the assessment of 25 disciplinary points ... is affirmed.
[6] To clarify his status on reinstatement, we direct that Mr. Caluwe be reinstated without disciplinary points. The District's policy provides that assessed disciplinary points shall remain in effect for varying periods of time. In our view, it would be impermissible to allow the District's unjustified termination action to toll the applicable time periods. Thus, they have expired in Mr. Caluwe's case and, consequently, he is entitled to reinstatement without blemish.
[7] Section 120.52(15)(a) provides:

(15) "Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of any agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term does not include:
(a) Internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public and which have no application outside the agency issuing the memorandum.
[8] Even if the Policy is a "rule" for purposes of section 120.52, we would not strike it down as invalid under section 120.54 because we believe that the District is entitled to defend the Policy on an ad hoc basis in section 120.57 hearings. See Barker v. Board of Medical Examiners, 428 So.2d 720 (Fla. 1st DCA 1983). Also, we need not decide whether the Policy qualifies as an internal management memoranda exception under section 120.52(15)(a), Florida Statutes (1983), so as to be excluded from the definition of a rule. Thus, we decline the District's suggestion to reconsider our prior holding in Webster v. South Florida Management District, 367 So.2d 734 (Fla. 4th DCA 1979).