500 So.2d 620 (1986)
BAPTIST HOSPITAL, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH and REHABILITATIVE SERVICES, Appellee, and
West Florida Hospital, Intervenor.
No. BK-459.
District Court of Appeal of Florida, First District.
December 23, 1986.
Rehearing Denied February 5, 1987.
F. Philip Blank, P.A., Tallahassee, for appellant.
John F. Gilroy, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
Donna H. Stinson, of Moyle, Flanigan, Katz, Fitzgerald & Sheehan, P.A., Tallahassee, for intervenor.
JOANOS, Judge.
Baptist Hospital, Inc. (Baptist) appeals from a final order of the Department of Health and Rehabilitative Services (HRS) denying its request to have its designated rehabilitation unit exempt from certificate of need (CON) review. HRS denied the request on the ground that Baptist's proposal constituted a substantial change in health services provided within the meaning of Section 381.494(1)(g), Florida Statutes (1983), so that CON review is required. Baptist's raises three issues for our review: (1) HRS's rejection of the hearing officer's findings of fact, (2) HRS's conclusion that Baptist's proposal constituted a substantial change in health services provided, and (3) the hearing officer's conclusion that West Florida Hospital had standing to intervene. We affirm.
*621 In January 1983 Baptist notified HRS that it proposed to establish a 50-bed designated rehabilitation unit within the existing licensed acute care beds in its Specialty Care Center. Baptist further advised that no new services were proposed. The unit was estimated to cost $550,000, which was below the threshold for review of capital expenditure. Baptist requested HRS determination regarding whether the proposed project was subject to CON review.
In February 1983 HRS advised Baptist that its proposal was not subject to review, since it involved no increase in existing bed capacity, was below the capital expenditure threshold of $600,000, and a substantial change in service was not at issue. On March 15, 1983, Baptist submitted its formal application for establishment of a 40-bed inpatient rehabilitation unit.
Following receipt of Baptist's formal proposal, HRS reconsidered its initial decision, and so notified Baptist  first through oral communications, and then through correspondence dated March 29, 1983. HRS advised that its February 1983 correspondence stating that CON review was not appropriate had been premature. Upon further consideration, HRS had determined that the various forms of rehabilitative care offered in the Baptist facility over the previous 12-month period had not been comprehensive in nature. Consequently, the application proposed a new service which required CON review.
In July 1983 Baptist petitioned for a formal administrative hearing. Over Baptist's objection, West Florida Hospital (West Florida) was granted leave to intervene. The primary issue for the hearing officer's determination was whether Baptist's proposed rehabilitation unit was subject to CON review.
Baptist Hospital is a 520-bed acute care facility. Since the 1950's, Baptist has offered some form of rehabilitative services to its patients. Since 1980, those services have included (1) physical therapy, (2) speech therapy, (3) prosthetic and orthopedic devices and services, (4) psychological services, and (5) dietary services. In addition, since 1980 Baptist has made the following variable services available through contractual arrangement: (1) physician services, (2) nursing services, (3) physical therapy, (4) speech therapy, (5) prosthetic and stroke devices, (6) inhalation therapy, (7) psychological services, (8) occupational therapy, (9) dietary services, and (10) social work. Also since 1980, Baptist has had a director of physical medicine under contract.
West Florida, which, since the institution of the proceedings, changed its name to West Florida Regional Medical Center, is a 547-bed general acute care hospital in Pensacola. It is a tertiary care facility, and includes separate buildings which contain an 84-bed psychiatric pavilion and a 58-bed rehabilitation program. It is a subsidiary of Hospital Corporation of America (HCA). The rehabilitation program became part of West Florida in 1983 when HCA purchased the Rehabilitation Institute of West Florida. A new facility was built on the grounds of West Florida, and the Rehabilitation Institute moved to the campus in October 1984. It is one of five designated rehabilitation centers in Florida for the Spinal Cord Injury (SCI) program of HRS. Baptist and West Florida are both designated as acute care centers of the SCI program.
The hearing officer determined that during the relevant time period Baptist provided skilled rehabilitative nursing care. The record reflects that the present rehabilitation care provided at Baptist is delivered through its skilled nursing facility, which is comprised of sixty-two beds certified by Medicare. Rehabilitative services are also provided at Baptist's main facility. Prior to 1982, Baptist had established criteria which regulated patient admissions, orientations, and discharges into its rehabilitation program; comprehensive policies establishing individualized programs for its rehabilitation patients; and comprehensive individualized patient care plans. Patients at Baptist in need of rehabilitative care are housed in various areas of the hospital. The physical therapy and occupational therapy *622 departments are separated, with one located in the main hospital and the other in the skilled nursing facility. Rehabilitative personnel, programs, and activities are also separated by location, which results in various rehabilitation teams operating in different parts of the hospital. Despite this physical separation of services, the rehabilitation teams operate in a coordinated manner. The teams, which are composed of nurses, physical therapists, occupational therapists, social workers, dietitians, respiratory therapists, and other professionals on an as need basis, meet and establish a care plan for the patient subject to the medical director's approval.
Baptist's proposal contemplated a consolidation of its present rehabilitative services into one location on the second floor of its skilled nursing facility. The consolidation would be accomplished by the reallocation of existing licensed beds currently not in use, the widening of doorways, other minor renovations, and the addition of a nurses' station for the rehabilitation unit. Implementation of Baptist's proposal would concentrate its various rehabilitation activities into one location.
When Baptist requested an exemption from CON review, the HRS policy in place exempted from CON review a consolidation of services so long as it involved no increase in the number of beds, change in the scope of services, or a capital expenditure in excess of the statutory threshold amount. The agency had not promulgated a rule defining rehabilitation services, although it was in the process of developing such a rule. The rule defining rehabilitation services became effective June 8, 1983. Prior to the rule's effective date, all rehabilitation beds were counted by HRS as acute care beds. It is HRS policy to construe the 12-month period referenced in Florida Administrative Code Rule 10-5.02(19),[1] defining "substantial change in service," as the twelve months immediately preceding a request for exemption from CON review for a specific proposal.
In February 1983, West Florida did not offer comprehensive rehabilitation services for its patients. However, such services were provided by the Rehabilitation Institute, which was purchased in March or April 1983 by HCA. Prior to sale of the Rehabilitation Institute, Baptist was also affiliated with the Institute. This affiliation allowed Baptist to have access to Rehabilitation Institute services. After the Rehabilitation Institute was purchased by HCA, these services were no longer available to Baptist. Although West Florida as a separate entity would not be affected if HRS determined that Baptist's proposed rehabilitation unit was exempt from CON review, West Florida Regional Medical Center would be adversely affected if Baptist were permitted to open a comprehensive rehabilitation facility. West Florida Hospital is the name sometimes applied to the entire organization, although in actuality the entity is West Florida Regional Medical Center. The Rehabilitation Institute now operates as a division of West Florida Regional Medical Center.
In his recommended order, the hearing officer found that implementation of Baptist's proposal would not impact on the quality of care provided at the Rehabilitation Institute or at West Florida Regional Medical Center. Concluding that during the preceding 12-month period, Baptist had provided the scope of services contemplated at Florida Administrative Code Rule 10-5.11(24),[2] the hearing officer recommended *623 that Baptist's proposal to establish a consolidated rehabilitation unit should be exempt from CON review.
HRS adopted the hearing officer's findings of fact, but rejected his interpretation of Rule 10-5.11(24). Instead, HRS concluded that the services enumerated in the rule contemplated a distinct unit as opposed to services provided in different parts of a facility. Therefore, HRS denied Baptist's request for exemption from CON review.
The first issue raised in this appeal concerns HRS's rejection of the hearing officer's findings of fact. Specifically, Baptist maintains that HRS failed to state its reasons for rejecting the hearing officer's finding regarding Baptist's provision of comprehensive medical rehabilitation service with the requisite particularity. We agree, but decline to set aside the Department's final determination because we conclude that the Department's decision fell within its discretionary authority to interpret its own rules and statutes.
It is well settled that an agency may not reject a hearing officer's factual findings on the conclusionary ground that they are not supported by competent substantial evidence, without offering specific reasons for such rejection. s. 120.57(1)(b), Fla. Stat. (1983); McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977); Lewis v. Department of Professional Regulation, 410 So.2d 593 (Fla. 2d DCA 1982). In the event the disputed factual determination involves agency expertise, the agency's substituted findings must be predicated on clearly articulated reasons, to facilitate orderly judicial review. Johnston v. Department of Professional Regulation, Board of Medical Examiners, 456 So.2d 939 (Fla. 1st DCA 1984). See also Morris v. Department of Professional Regulation, 474 So.2d 841 (Fla. 5th DCA 1985). In Island Harbor Beach Club Ltd. v. Department of Natural Resources, 476 So.2d 1350 (Fla. 1st DCA 1985), this court observed that "a broad ruling [upon proposed findings] ... without more, makes it necessary during appellate review of the proceedings to painstakingly compare the final order, the proposed findings, and the record in a frequently frustrating attempt to sort out which proposed finding was rejected on which ground and whether such rejection was proper or improper."
The label affixed to a particular finding by the hearing officer or the agency is not necessarily determinative of its nature. Matters that are susceptible of ordinary methods of proof, such as determining the credibility of witnesses or the weight to accord evidence, are factual matters to be determined by the hearing officer. On the other hand, matters infused with overriding policy considerations are left to agency discretion. Holmes v. Turlington, 480 So.2d 150, 153 (Fla. 1st DCA 1985); Heifetz v. Department of Professional Regulation, Division of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985); Leapley v. Board of Regents, Florida State University System, 423 So.2d 431, 432 (Fla. 1st DCA 1982); School Board of Leon County v. Hargis, 400 So.2d 103, 107 (Fla. 1st DCA 1981).
In this case, the hearing officer found that during the relevant time period Baptist had offered skilled rehabilitation nursing care and offered on a regular basis services which constitute comprehensive medical rehabilitation service. HRS asserts that it incorporated the hearing officer's findings of fact in the final order, that its exception to the finding concerning skilled rehabilitation nursing care sufficiently complied with the letter and spirit of section 120.59, Florida Statutes, and the finding concerning Baptist's provision of comprehensive medical rehabilitation services was a legal issue which the agency may reject or modify without limitation.
Our review of the record establishes that there is ample evidence to support the hearing officer's findings concerning Baptist's provision of skilled nursing care and medical rehabilitation services for the requisite preceding twelve months. Since this evidence *624 was susceptible of ordinary methods of proof, under other circumstances it would fall into the realm of factual matters reserved to the hearing officer's determination. Morris v. Department of Professional Regulation, 474 So.2d 841, 844 (Fla. 5th DCA 1985). In this case, however, the evidence related to both the nature of and manner in which rehabilitation services were provided by Baptist. We conclude that the hearing officer was correct with regard to the finding that rehabilitation services had been provided by Baptist for the preceding twelve months. We agree also that this was a factual determination, which cannot be set aside if supported by competent substantial evidence. On the other hand, we conclude that the manner in which these services were provided involves overriding agency considerations, and is therefore reserved to agency discretion. Heifetz v. Department of Professional Regulation, 475 So.2d at 1282. Consequently, in this instance, we find the Department's conclusion that CON review was indicated for Baptist's proposal was not clearly erroneous.
It is the agency's interpretation of Baptist's proposal which constitutes the second issue in this appeal. Section 381.494(1), Florida Statutes (1983) sets forth the health care related projects subject to CON review. Section 381.494(1)(g), applicable herein, provides that CON review is required for 
(g) A substantial change in health services provided by a health care facility which results in either a capital expenditure in any amount or entails an annual operating cost of at least $250,000 or a change in the number of psychiatric or rehabilitation beds.
The underscored language became effective July 1, 1983. Ch. 83-244, § 2, Laws of Fla.
In January 1983, when Baptist sought exemption from CON review, "substantial change in services" was defined in Florida Administrative Code Rule 10-5.02(19) as 
the offering of a health service by a health care facility or hospice care by any current provider of health care which was not offered on a regular basis in or through such health care facility or health care provider within the twelve month period prior to the time such change in service would be offered; or the termination of a health service if a capital expenditure in any amount is associated with such termination.
Now, Florida Administrative Code Rule 10-5.11(24)(b), which became effective June 8, 1983, defines comprehensive medical rehabilitation services as services provided in a "facility or a distinct part of a facility, a unit, which provides a program of comprehensive medical rehabilitation services and which is designed, equipped, organized and operated to deliver comprehensive medical rehabilitation services." (emphasis supplied).
In its initial brief, Baptist maintained the provisions of Rule 10-5.11(24)(b), which went into effect after Baptist sought exemption from CON review, were improperly applied by HRS in determining that Baptist's proposal was not exempt. It is clear, however, that the rule and amended statute were not as such applied, since HRS advised Baptist that it was not exempt from CON review well before the effective date of the rule or the amended statute. However, it is equally clear, that the provisions of the rule as it had been proposed and published were applied, because in its final order HRS relies on Baptist's lack of a consolidated rehabilitation unit as evidence that Baptist's proposal contemplates a "substantial change."
In an analogous situation, applying a different subsection of section 381.494(1), this court declined to set aside the Department's interpretation of section 381.494(1)(f), "as not clearly erroneous or unauthorized in construing a `new home health agency' as one which expands its services into counties where it has not been previously licensed or subjected to CON review." Home Health Professional Services, Inc. v. Health and Rehabilitative Services, 463 So.2d 345 (Fla. 1st DCA 1985). Home Health Services argued, as does Baptist, *625 that its proposal did not constitute a change in existing services. Home Health proposed to provide services in two additional counties, but it intended to render those services without adding new office space or equipment and urged that a "new entity" would not be created.
The Home Health case is similar to the instant case on the question of applicability of incipient policy. In Home Health the Department had not enacted a rule defining "new home health agency," while in this case the rule defining "rehabilitation facility" was not in effect, but had been published in Florida Administrative Law Weekly when the Department made its decision. In Home Health this court stated "the fact that HRS has not reduced its policy to a rule does not automatically invalidate its decision in this case." 463 So.2d at 348. An examination of the record established that HRS consistently applied the policy of requiring applicants to undergo CON review when they seek to expand services to counties where they are not licensed. See also: Turro v. Department of Health and Rehabilitative Services, 458 So.2d 345 (Fla. 1st DCA 1984).
In this case, the record reflects that the policy promulgated as Florida Administrative Code Rule 10-5.11(24) had been explicated at the time Baptist sought exemption from CON review. The determination that rehabilitation services provided in separate areas in Baptist's facility would be substantially changed if consolidated into a distinct unit is in our judgment a closer question than the question resolved in Home Health Services. In this case, HRS concedes that Baptist's proposal would not result in additional or new health care services. Instead, it contends the proposed consolidation of services constitutes a substantial change requiring CON review. On the authority of the Home Health Professional Services v. Department of Health and Rehabilitative Services decision, we hold that this construction is neither unauthorized nor clearly erroneous, and should therefore be affirmed. See Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So.2d 716, 719 (Fla. 1983); Home Health Professional Services v. Department of Health and Rehabilitative Services, 463 So.2d at 347; and cases cited therein.
The third issue in this appeal concerns Baptist's contention that West Florida lacked standing to intervene. Pursuant to section 120.52(10)(b), "[a]ny person ... whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party," has standing to participate in a section 120.57 proceeding. Economic injury is a sufficient substantial interest for standing to intervene in a CON proceeding. Florida Medical Center v. Department of Health and Rehabilitative Services, 484 So.2d 1292, 1294 (Fla. 1st DCA 1986). In Florida Medical Center, Judge Ervin, writing for the court, noted that this court's opinions "have recognized that competing health care facilities within the same service area have the right to intervene as third parties." 484 So.2d at 1294. And in St. Francis Parkside Lodge of Tampa Bay v. Department of Health and Rehabilitative Services, 486 So.2d 32 (Fla. 1st DCA 1986), the court reiterated that duplication of services with an attendant increase in the cost of delivery of health care services constitutes that substantial interest of an existing health care facility in the same service area which will accord party status as an intervenor.
Baptist argues the record contains no evidence that West Florida will experience economic injury should Baptist go forward with its rehabilitation proposal. Contrary to this assertion, the record reflects that West Florida Regional Medical Center, formerly West Florida Hospital, is a similar health care facility in the same service area. West Florida Hospital did not provide rehabilitation services before it became a division of HCA. However, the HCA purchase encompassed not only West Florida but also the Rehabilitation Institute. Rehabilitation Institute moved its operation into a new building on West Florida's grounds and operates as a part of the West Florida Regional Medical Center unit. *626 Therefore, we conclude that the hearing officer acted properly in granting intervenor status to West Florida.
Since we conclude that the HRS construction of section 381.494(1)(g) to the effect that organization of diffuse rehabilitation services into a distinct rehabilitation unit constitutes a substantial change of services is not clearly erroneous, we AFFIRM the final order.
THOMPSON and NIMMONS, JJ., concur.
NOTES
[1] Fla. Admin. Code Rule 10-5.02(19), provides:

(19) "Substantial change in service" means the offering of a health service by a health care facility or hospice care by any current provider of health care which was not offered on a regular basis in or through such health care facility or health care provider within the twelve month period prior to the time such change in service would be offered; or the termination of a health service if a capital expenditure in any amount is associated with such termination.
[2] Fla. Admin. Code Rule 10-5.11(24)(b)3.d., provides:

d. Programs and Services. The scope of rehabilitation services provided must include skilled rehabilitation nursing care, physical therapy, speech therapy, prosthetic and orthopedic devices and services, psychological services and dietary services.