542 So.2d 1362 (1989)
B.B., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 88-2521.
District Court of Appeal of Florida, Third District.
May 9, 1989.
*1363 DuFresne and Bradley, P.A., William DuFresne and Loraine Hoffman, Miami, for appellant.
R.S. Power, Asst. Gen. Counsel, for appellee.
Before FERGUSON, JORGENSON and LEVY, JJ.
JORGENSON, Judge.
B.B., a Dade County public school teacher, appeals from an order of the Department of Health and Rehabilitative Services (HRS) denying her request for expungement of a confirmed finding of child abuse entered against her. For the following reasons, we reverse and remand this cause to HRS.
On October 29, 1987, B.B., a first-grade teacher, intervened in a shoving match between her students who were standing in line waiting to enter a classroom.[1] B.B. placed her hand on the shoulder of L.G., the student who the teacher believed was the troublemaker and pulled L.G. out of the line of students. B.B. accidentally caught some of L.G.'s long hair in her hand and felt "something give" as she guided the child out of the line. B.B. let go of L.G.'s shoulder, noticed that ten to twelve strands of hair had come out, apologized to L.G., and gave her a kiss. L.G. did not cry out, complain, or appear to be hurt. Later that same day, B.B. noticed that a considerable amount of L.G.'s hair had fallen out and reported the incident to the principal. After receiving a report of abuse, HRS began investigating the incident.
One week after the incident, L.G. was examined by a pediatrician at Jackson Memorial Hospital at the request of HRS. The pediatrician found hair loss in an area 3" by 1 1/2", a "bluish purple bruise" in the area, and broken hairs of different lengths. She classified the injury as traumatic hair loss and concluded that neither tuberculosis medication which the child had been taking six months earlier nor a skull fracture or concussion suffered by L.G. on October 20, 1987, would have caused the injury.[2]
HRS investigated the incident, confirmed the report of abuse, identified B.B. as the abuser, and placed the report in its abuse registry maintained pursuant to section 415.103, Florida Statutes (1987). B.B. moved to expunge the report pursuant to section 415.504(4)(d)(3)(c); HRS denied that request, and B.B. requested an administrative hearing.
The hearing officer, after receiving testimony from HRS investigators, L.G., L.G.'s mother, a school secretary, and B.B., concluded that although B.B. admitted causing L.G.'s hair loss the testimony showed that "the injury was the result of an accidental happening and was not attributable to either an intentional or negligent act on the part of B.B." The hearing officer further concluded that B.B. had not committed abuse and recommended that HRS grant her request for expungement from the *1364 abuse registry. The hearing officer explicitly relied upon HRS's order in the case of H.H. v. DHRS, DOAH No. 86-454 OC (DHRS, June 15, 1987), in which HRS found that no abuse had occurred when a Child Detention Child Care Worker had accidentally closed the door on the wrist of a child in his care.
HRS adopted the hearing officer's findings of fact but denied B.B.'s request for expungement. The agency's order stated that "[i]ntent to injure is not dispositive. The dispositive issue is whether the force used by respondent to restore order and discipline in a line of first-grade children was reasonable and therefore privileged." In the section of its order entitled "conclusions of law," HRS found "the force used by respondent clearly excessive" (emphasis added) and stated that "[t]he use of excessive force constitutes abuse under Chapter 415."
In finding that B.B. used excessive force when removing L.G. from the line, HRS improperly substituted its own factual finding for the factual findings of the hearing officer. "The agency in its final order ... may not reject or modify the findings of fact [of the recommended order] unless the agency first determines from a review of the complete record, and states with particularity in its order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of the law." Section 120.57(1)(b)(10), Florida Statutes (1987). HRS "was not free to reweigh the evidence presented at the hearing, but rather was limited to determining whether some competent substantial evidence was presented which would support the hearing officer's conclusions." South Fla. Water Management Dist. v. Caluwe, 459 So.2d 390, 394 (Fla. 4th DCA 1984) (citations omitted); see also Sneij v. Department of Professional Reg., 454 So.2d 795 (Fla. 3d DCA 1984) (where hearing examiner's findings based on competent substantial evidence, agency had no authority to reject examiner's findings and substitute its own findings).
Where issues "are determinable by ordinary methods of proof through the weighing of evidence and the judging of the credibility of witnesses," they are "solely the prerogative of the hearing officer as finder of fact." Holmes v. Turlington, 480 So.2d 150, 153 (Fla. 1st DCA 1985).
As the trier of fact, the hearing officer made no finding that B.B.'s use of force was excessive. HRS, in reviewing the recommended order, could not make an entirely new factual finding that B.B. used excessive force and then use that finding to deny B.B.'s motion for expungement.
Although HRS characterized its finding of excessive force a "conclusion of law," the question of whether B.B. used excessive force in removing L.G. from the line was a question of fact for the trier of fact. See Kama v. State, 507 So.2d 154, 158-159 (Fla. 1st DCA 1987) ("Whether in any particular case the punishment inflicted was permissible or excessive must necessarily depend on the age, condition, and disposition of the child, as well as the attendant circumstances. This determination must be made by the jury under proper instruction.") (footnote omitted).
Mislabeling a finding of fact a "conclusion of law" does not allow HRS to exceed the scope of its review of the hearing officer's findings of fact. See South Fla. Water Management Dist. v. Caluwe, 459 So.2d at 395 ("The District's responsibility in this regard [determining whether substantial competent evidence supported hearing officer's conclusions] cannot be avoided by merely labeling contrary findings `conclusions of law'"); Harry's Restaurant & Lounge, Inc. v. Department of Bus. Reg., 456 So.2d 1286, 1288 (Fla. 1st DCA 1984) ("Although labeled a `Conclusion of Law,' the Division's finding that appellant failed to operate primarily as a bona fide restaurant is, in reality, a finding of fact. As such, it is an improper rejection of the hearing officer's finding of fact since the officer's finding is supported by the record.") (footnote and citations omitted).
*1365 For the foregoing reasons and because the findings of the hearing officer were supported by substantial competent evidence, we reverse the order of HRS denying B.B.'s motion for expungement and remand the cause to HRS.[3]
Reversed and remanded.
NOTES
[1] The facts here are taken from the hearing officer's findings of fact.
[2] At the administrative hearing, the secretary of the principal of L.G.'s school testified that, when she called L.G.'s mother the morning of the incident to report L.G.'s hair loss, L.G.'s mother had said that her daughter's hair often fell out because of the tuberculosis medication, and that she wasn't surprised by the hair loss. L.G.'s mother testified that L.G. also experienced hair loss following the head injury. However, L.G.'s mother later denied that her daughter normally suffered hair loss.
[3] The agency also erred by departing without explanation from its previous policy that "accidental happenings" are not child abuse. In H.H. v. DHRS, DOAH No. 86-454 OC (DHRS, June 15, 1987), the agency stated that "[t]he definition of child abuse requires an `act'. This requirement for a volitional act must be distinguished from an accidental happening... . An accidental happening is not abuse." H.H. at 3.

If HRS chose to depart from this policy, it was required to explain its departure. § 120.68(12)(c), Fla. Stat. (1987). Because it failed to do so, remand would be proper on this ground alone.
We are deeply troubled by HRS's practice of including in the child abuse registry the name of a teacher who was merely doing that which by law she was charged to do. See § 232.27, Fla. Stat. (1987) ("Authority of teacher.  Subject to law and to the rules of the district school board, each teacher or other member of the staff of any school shall have such authority for the control and discipline of students as may be assigned to him by the principal or his designated representative and shall keep good order in the classroom and in other places in which he is assigned to be in charge of students."). This policy is being formulated on a case-by-case basis, see B.L. & R.W.H. v. Department of Health & Rehabilitative Servs., 545 So.2d 289 (Fla. 1st DCA 1989), outside the rulemaking strictures established by the Florida Administrative Procedure Act, chapter 120, Florida Statutes (1987).
Inclusion in the registry, alongside the names of convicted child molestors and persons who have committed violent crimes against children, is a harsh and permanent sanction. The stigma attached to the label "child abuser" is severe, and a person's name can only be removed from the child abuse registry by expungement or, presumably, death of the person named as an abuser.