399 So.2d 103 (1981)
Neil JENKINS, Appellant,
v.
STATE BOARD OF EDUCATION, Appellee.
No. UU-191.
District Court of Appeal of Florida, First District.
May 29, 1981.
Leslie King O'Neal of Graham, Markel, Scott, Marlowe, Appleton & McDonough, P.A., Orlando, for appellant.
Gene T. Sellers, Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Judge.
Jenkins, holder of a Florida teaching certificate in the areas of music, education, and junior college, appeals from an order of the Governor and Cabinet, sitting as the State Board of Education, suspending his certificate for two years. The stated basis for the suspension is that Jenkins violated Fla. Admin. Code R. 6B-1.02(2)(c), a rule of the State Board of Education, in that he "did not `make reasonable effort to protect [a certain student] from conditions harmful to learning or to health and safety.'" We reverse the Board's order.
The Board entered its order to this effect on findings of fact adopted from the recommended order of a DOAH hearing officer, who heard the testimony and recommended dismissal of this petition by the Professional Practices Council for the revocation or suspension of Jenkins's license. Sections 231.09, .28, Fla. Stat.(1979). At the time of the incident complained of, Jenkins was employed by the Osceola County School Board as a high school music teacher. The hearing officer's findings of fact that were the stated basis for the State Board's order *104 were that Jenkins and a 16-year-old female student were driving back at night to St. Cloud from Cocoa, where they and other students had attended a church drama program;
They stopped at Burger King to get some food, and then began to drive back to St. Cloud; the student later complained of stomach cramps and got into the back seat of Respondent's car; some time later, the student asked the Respondent to stop the car because she was feeling worse; Respondent pulled off the road into a dirt side road and backed his car into a cattlegap entrance way with his car facing toward the side road... .
When police officers approached to investigate the parked car, Jenkins was in the back seat of the car with the student. There was evidence before the hearing officer, not alluded to either in the hearing officer's findings or in the State Board's order, that Jenkins was clad only in trousers and socks when the police approached, though the temperature on that March night was in the "high 30's to low 40's."
Little imagination is required to raise suspicions that this teacher was engaged in sexual misconduct toward and with his student. That in effect was the formal charge against Jenkins  that he "was guilty of improper conduct toward a female student," otherwise described as "conduct which is improper and a poor example for students and personal conduct which seriously reduces his effectiveness as an employee of the school board." Section 231.28 provides that the Department may suspend or revoke a teaching certificate if the teacher is
(1) ... found guilty of personal conduct which seriously reduces his effectiveness as an employee of the school board... .
With an exaggerated sense of delicacy, the formal charge against Jenkins alluded only to "improper conduct toward a female student" and left the rest to imagination, but the Professional Practices Council made clear before the hearing officer, by argument and by its proposed recommended order, that the "improper conduct" was of a sexual nature. The Council's presentation to the Governor and Cabinet was freighted with the same implications. In the briefs and oral argument before us, counsel for the State Board made the same suggestion.
The trouble with this view of the record is that the DOAH hearing officer explicitly rejected it as a matter of fact, and the Governor and Cabinet expressly adopted the hearing officer's findings of fact. The recommended order stated at length:
Several students testified that Respondent and the subject student were often together, but the overwhelming weight of the evidence is that relationship was not improper or any different from Respondent's relationship with other students.
James Heberlin and Bruce DeBoard, both Osceola School Board Members, testified that they would vote to rehire Respondent as an employee of the School Board. Mr. DeBoard also testified that he received several letters from citizens supportive of Respondent and had received no letters opposing him.
Mrs. Ramona Norman, mother of the female student involved in the subject incident, testified that she trusted Respondent as a teacher with her daughter and did not believe that any improper conduct occurred during the subject incident or at any other time. Mrs. Norman also testified that her daughter had been treated medically before and after the March 11, 1979, incident for stomach and adolescent emotional problems.
Reverend Myra James, former minister at Respondent's church, testified that Respondent was very active in church activities, particularly with youth groups. She added that he was very conscientious, dedicated and interacted extremely well with youth. Based on her familiarity with Respondent, Reverend James could not perceive the Respondent engaging in any untoward conduct with a student as alleged.
The student involved in the subject incident testified respecting the alleged incident. She confirmed Respondent's testimony that Respondent pulled over to a side road in an effort to comfort her and *105 that nothing improper occurred then, or ever, between Respondent and herself.
There was no evidence offered to support the allegation that the Respondent's effectiveness as a teacher was reduced because of the alleged incident. See Boyette v. Professional Practices Council, 346 So.2d 598, 600 (Fla.1st DCA 1977). To the contrary, two School Board Members as well as other students testified that the Respondent continued to enjoy a good reputation in the community as a teacher and that the subject incident has had no adverse effects on his ability to function as a teacher.
By adopting the hearing officer's recommended finding that Jenkins's relationship with the student "was not improper or any different from Respondent's relationship with other students," and that "nothing improper occurred then, or ever," the State Board effectively rejected and dismissed as unfounded all implications and innuendos of sexual misconduct. The State Board had hardly any choice in the matter: the only satisfactory ground for rejecting the hearing officer's findings of fact on an issue such as this would have been that the findings "were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law." Section 120.57(1)(b)9; McDonald v. Dept. of Banking and Finance, 346 So.2d 569, 579 (Fla.1st DCA 1977).
By adopting the hearing officer's recommended finding that Jenkins's effectiveness as a teacher has in no way been reduced, the State Board rendered impossible any finding that Jenkins, as charged, was guilty of "personal conduct which seriously reduces his effectiveness as an employee of the school board." Section 231.28(1).
What, then, is Jenkins now found guilty of, and for what cause shall his teaching certificate be suspended for two years?
The State Board's conclusion, substituted for the charge that Jenkins "was guilty of improper conduct toward a female student" that "seriously reduces his effectiveness" as a teacher, is that Jenkins "did not `make reasonable effort to protect the student from conditions harmful to learning or to health and safety' as required by [Rule] 6B-1.02(2)(c)," which provides:
(2) In fulfilling his obligations to the student, the educator ... (c) shall make reasonable effort to protect the student from conditions harmful to learning or to health and safety.
The State Board's order does not tell us its reasons for considering that the student was threatened with "conditions harmful to learning or to health and safety" and that Jenkins failed to make reasonable efforts to protect the student from those conditions. Since the sexual overtones have been eliminated from the case, we can only speculate that the Board's finding of "conditions harmful to ... health and safety" referred to the girl's stomach cramp, and that the Board faulted Jenkins, to the extent of a two-year suspension, for stopping "in an effort to comfort" the girl rather than driving on for medical attention. This speculation on our part is of course no proper substitute for an agency's elucidation of nonrule policy deduced from a statute or rule. General Development Corp. v. Division of State Planning, 353 So.2d 1199, 1210 (Fla.1st DCA 1977).
But that deficiency is inconsequential in this case.
Even if we were inclined to defer to the State Board's reading of Rule 6B-1.02(2)(c) into the circumstances of this case  and that is a most attenuated and vulnerable reading of the rule, we think  a reversal of this suspension order would nevertheless be required, for the reason that it is not a statutory ground for suspension that the teacher simply "did not"  that being the State Board's only finding  supply the degree of student protection contemplated by the rule, or by the Board. More than simple failure to comply must be shown; more than negligence must be shown. What must be shown, if license suspension or revocation is to be the penalty, is that the teacher refused to comply with a rule. Section 231.28 provides:

*106 The Department of Education shall have authority to suspend the teaching certificate of any person for a period of time not to exceed 3 years, ... provided: [¶] (1) It can be shown that such person ... has refused to comply with the regulations of the State Board of Education or the school board in the district in which he is employed. (emphasis added)
There is no finding in the State Board's order that Jenkins "refused to comply" with Rule 6B-1.02(2)(c) as interpreted by the State Board. Nor is there any evidence in the record that Jenkins "refused to comply," which implies knowledge of an explicit requirement and a conscious decision not to comply. Nothing approaching that has been shown concerning Jenkins's asserted failure to make a "reasonable effort to protect the student from conditions harmful to learning or to health and safety."
The order suspending Jenkins's teaching certificate is REVERSED and the proceedings against him are DISMISSED.
SHAW, J., concurs.
CAWTHON, VICTOR M., Associate Judge, dissents, without opinion.