480 So.2d 150 (1985)
Brenda McDonald HOLMES, Appellant,
v.
Ralph D. TURLINGTON, As Commissioner of Education, Appellee.
No. BG-433.
District Court of Appeal of Florida, First District.
December 13, 1985.
*151 Philip J. Padovano, Tallahassee, for appellant.
Judith A. Brechner, Gen. Counsel, State Bd. of Educ., Tallahassee, for appellee.
WIGGINTON, Judge.
Appellant challenges the final order of the Education Practices Commission directing that she be reprimanded and placed on probation for a period of three years during which time she may not act as a chaperone in school activities. Because we hold that the commission improperly substituted its ultimate finding of fact for that of the hearing officer, we reverse.
Appellant was charged by administrative complaint filed in 1983 with having violated section 231.28, Florida Statutes (1983), in that she was guilty of "gross immorality or an act involving moral turpitude," and rule 6B-1.06(3)(h), Florida Administrative Code, by her exploiting a professional relationship with a student for personal gain or advantage. The allegations of misconduct set forth in the complaint reflected incidents which occurred during the spring of 1982 while on a senior class trip sponsored by Pensacola High School. It was alleged that during the trip appellant engaged in improper and unprofessional conduct of a romantic nature, in that she held hands with a male student and hugged him in the presence of students and teachers, and permitted the student to spend the night in her hotel room where they engaged in intimate sexual activities.
The cause came on for a formal hearing. Under the portion of his recommended order entitled "Findings of Fact," the hearing officer set forth the testimony of appellant and witnesses which predictably established conflicting versions of the events that allegedly took place during the trip. Under the portion entitled "Conclusions of Law," the hearing officer rejected the testimony of Deborah Greene, appellant's roommate during the trip, who had testified that she was awakened during the night by noises of what she assumed to be sexual activity. The hearing officer concluded that since Greene had been asleep when the student entered the room and was awakened only when she allegedly heard the noises, her testimony could not contradict appellant's testimony to the effect that the student had pounded on the door, had appeared drunk and in need of assistance, and had initiated the personal advance. According to appellant, when she resisted his advances, the student acceded to her wishes. Desiring to avoid further disturbance, appellant allowed the student to fall asleep in her bed while she slept in a chair.
The hearing officer pointed to the uncontradicted testimony establishing that the room was in a darkened condition at the time the alleged sexual activity was underway, and noted Greene was unable to testify that appellant and the student were not dressed at the time she claimed to have heard the suspicious sounds from the adjoining bed. Additionally, the hearing officer emphasized the fact that Greene did not report the incident until one year later, and not until the hearing did she accord sexual connotations to "her perceptions regarding what she believed she overheard in a darkened room, late at night between unspecified time periods of sleep." All of this rendered her testimony in the hearing officer's mind "tinged with some uncertainty" *152 as to what she actually perceived that night, and too "problematic" to form a basis for a finding of guilt.
The hearing officer held that no act of moral turpitude or guilt of gross immorality was established to prove a violation of section 231.28.[1] He also held that there was no violation of rule 6B-1.06(3)(h), as there was "clearly no evidence of record to support a finding that [appellant] entered into any relationship or dealings with [the student] for any sort of personal gain or advantage... ."[2] He observed that although evidence presented at the hearing pointed to some physical contact between the two during the trip, such as an "impromptu hug, handholding and hugging and/or kissing in the hotel room, which last acts occurred at [the student's] volition only ...," it was not established that those acts occurred in the context of a romantic or sexual involvement. Moreover, he pointed to testimony of two other teacher-chaperones who did not consider such conduct "in itself unusual." In sum, it was the hearing officer's opinion that
... the totality of the evidence and circumstances of this case does not suggest an improper, romantic or sexual teacher-student relationship. What obviously occurred however, was a case of extreme poor judgment on the part of [appellant], which renders quite just (in the Hearing Officer's opinion) the reprimand already meted out by the School Board.
The recommended order was forwarded to the Education Practices Commission, which purported to adopt the hearing officer's findings of fact and conclusions of law, with the exception of the "Conclusion of Law regarding Rule 1.06(3)(h)" which was rejected. The commission concluded that appellant violated rule 6B-1.06(3)(h), and thus section 231.28(1)(h).[3] To that end, its final order reads:
The panel rejects the Recommendation of the Recommended Order based upon its legal conclusions and the Findings in the record that: [Appellant] allowed the male student to remain in [appellant's] hotel room overnight while student was intoxicated and also allowed the student to bathe in her [appellant's] room. Aslo [sic] the panel finds that the physical contacts occurring between [appellant] and the male student, including hugging, kissing, handholding, as contained within the record, support its conclusions and penalty.
Accordingly, the commission ordered appellant be reprimanded and placed on probation for a period of three years during which time she shall not act as a chaperone in school activities.
Appellant raises three points on appeal to challenge the commission's final order. Since we have concluded that the commission improperly substituted its own ultimate finding of fact for that of the hearing officer in violation of section 120.57(1)(b)9, Florida Statutes (1983), for which error we *153 reverse, we need not reach the other issues raised challenging the constitutionality of section 231.28(1)(h), and alleging that it constitutes an unlawful delegation of legislative power.
The problem arises in this case by way of the label accorded the hearing officer's statement that there was no record evidence to support a finding that appellant entered into any relationship with the student for personal gain or advantage, thereby violating rule 6B-1.06(3)(h). Although it was stated in terms of a conclusion of law in both the recommended order and the final order, we hold that deviation from a standard of conduct is essentially an ultimate finding of fact clearly within the realm of the hearing officer's fact-finding discretion. Cf. Heifetz v. Department of Business Regulation, Division of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985); School Board of Leon County v. Hargis, 400 So.2d 103 (Fla.1st DCA 1981).
In the instant case, the hearing officer expressly found no impropriety in appellant's conduct. Therefore, by holding that appellant's conduct did violate rule 6B-1.06(3)(h), the commission implicitly substituted its own finding of improper conduct. As was true in Heifetz, here the commission has shown no special expertise in determining whether one holding a teaching certificate has conducted himself within the standards of ethical conduct enunciated in rule 6B-1.06, or has deviated from a standard of conduct in violation of section 231.28. These issues, not infused with policy considerations, are determinable by ordinary methods of proof through the weighing of evidence and the judging of the credibility of witnesses and therefore are solely the prerogative of the hearing officer as finder of fact. Heifetz; McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). The commission could alter the hearing officer's ultimate finding of fact only if it was not supported by competent, substantial evidence. Section 120.57(1)(b)9.[4] Since the hearing officer's ultimate finding of no conduct sufficiently improper to violate rule 6B-1.06(3)(h) was supported by competent, substantial evidence, we must reverse the final order placing appellant on probation.
REVERSED.
BARFIELD, J., and WILLIS, BEN C. (Ret.) Associate Judge, concur.
NOTES
[1] At this juncture, the hearing officer was specifically concerned with whether there had been a violation of section 231.28(1)(c) which provides:

(1) The Education Practices Commission shall have authority to suspend the teaching certificate of any person as defined in s. 228.041(9) or (10) for a period of time not to exceed 3 years, thereby denying him the right to teach for that period of time, after which the holder may return to teaching as provided in subsection (4); to revoke the teaching certificate of any person, thereby denying him the right to teach for a period of time not to exceed 10 years, with reinstatement subject to the provisions of subsection (4); to revoke permanently the teaching certificate of any person; or to impose any other penalty provided by law, provided it can be shown that such person:
(c) Has been guilty of gross immorality or an act involving moral turpitude ...
[2] Rule 6B-1.06(3)(h), F.A.C., is part of the Principles of Professional Conduct for the Education Profession in Florida and provides:

(3) Obligation to the student requires that the individual:
(h) Shall not exploit a professional relationship with a student for personal gain or advantage.
[3] Section 231.28(1)(h) allows imposition of those sanctions enumerated in section 231.28(1) where it can be shown that the person:

(h) Has otherwise violated the provisions of law or rules of the State Board of Education, the penalty for which is the revocation of the teaching certificate.
[4] Section 120.57(1)(b)9 provides in part:

The agency may adopt the recommended order as the final order of the agency. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the recommended order, but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.