601 So.2d 1232 (1992)
Zelma GOSS, Appellant,
v.
DISTRICT SCHOOL BOARD OF ST. JOHNS COUNTY, Florida, Appellee.
No. 91-1785.
District Court of Appeal of Florida, Fifth District.
June 12, 1992.
Rehearing Denied July 20, 1992.
*1233 Thomas W. Brooks of Meyer and Brooks, P.A., Tallahassee, for appellant.
Michael K. Grogan and Timothy B. Strong of Coffman, Coleman, Andrews & Grogan, Jacksonville, for appellee.
PETERSON, Judge.
Zelma Goss appeals a final order of the District School Board of St. Johns County (Board) in which she was found guilty of misconduct in office, endangering the safety of students, and reckless operation of a Board school bus. After her suspension, Goss was reinstated to a position in the Board's transportation department, but without the right to receive back pay. The Board's decision was contrary to the conclusion of law of the Division of Administrative Hearings hearing officer which exonerated Goss of the charges but which recommended nevertheless that she receive no back pay during her period of suspension. We affirm.
Goss had been driving a school bus for the Board for fifteen years when, on August 27, 1990, after completing her regular bus route, she heard a two-way radio communication from another bus driver calling for help. The calling driver was requesting assistance because she was unable to stop a fight between two boys on her bus. The children on that bus had already been returned to school earlier in the afternoon by another bus driver who had refused to continue on his route because the children were severely misbehaving.
When Goss arrived at the scene, she saw a number of school administrators and law enforcement officers attempting to gain control of the student occupants of the bus who were hanging out of the windows, yelling obscenities, and otherwise acting completely out of control. She was successful in gaining control of the students because some of them had traveled on her bus in previous years. However, one of the students, J.B., refused her directions and was removed from the bus by a deputy sheriff. Goss then volunteered to complete the route as driver with the calling driver's assistance. After admonishing J.B. to behave, the sheriff's deputy allowed J.B. to reboard the bus. Goss volunteered to complete the route as driver with the assistance of the calling driver. J.B. had been suspended from school in the past as a result of Goss's report of his previous misconduct.
The bus continued with the uneventful delivery of the students to their stops until Goss noticed that J.B. had failed to get off at his regular stop. She ordered him out at the next stop and had to repeat the order several times before he finally moved. On the way out, J.B. called her "bitch," struck her in the back of the head, and quickly ran off the bus, calling her other names and *1234 making obscene gestures at her. He crossed in front of the bus to the opposite side of the road, continued the obscene gestures and comments, and dropped his pants and "mooned" her.
At this point, Goss started moving her bus forward and turned the steering wheel quickly to the left towards the side of the road where J.B. was, and Goss yelled out of the driver's window at J.B. that she intended to press charges against him. She then immediately turned back to the right, continuing on her route. This quick movement of the steering wheel lasted approximately two seconds. The other driver later testified that the bus "went forward very wiggly" during this movement.
The hearing officer found that the bus had quickly crossed the middle line of the road by eight to ten inches and then had returned to the right-hand lane. The hearing officer also found that Goss's swerve was an instinctive reaction to get J.B.'s attention, that she had not steered the bus at J.B. nor did she intend to strike him, and that the bus did not come near J.B. or pose any real danger to him. While the hearing officer did not find Goss guilty of the Board's charges, the officer did state, "At worst, Ms. Goss merely suffered a two-second lapse in what has been almost sixteen years of exemplary service. At no time was the safety of any student endangered or threatened." Although the hearing officer found Goss innocent of the charges, the hearing officer recommended a penalty because of the "seriousness of the allegations and the momentary loss of judgment." The recommendation was that Goss immediately be reinstated to her driving position but that she should not obtain back pay accrued during her suspension.
The Board accepted the hearing officer's findings of fact with the following exceptions: "(1) When Goss started the bus forward from the stop ... she improperly swerved the bus to the left. (2) No other driver for the St. Johns County School Board has ever engaged in conduct similar to the conduct which Goss has admitted." The Board rejected the hearing officer's conclusion of law that it had failed to carry its burden of proof as to the charges that Goss was guilty of misconduct in office, willful neglect of duty, endangering the safety of students, or intentional and reckless operation of a Board vehicle. The Board substituted its conclusion that she was guilty of the misconduct, endangering the safety of students, and reckless operation of the bus. The Board then imposed a penalty by reinstating her employment in the transportation department without back pay but disallowing her to operate a Board vehicle without additional monitoring and supervision.
On appeal, Goss raises the issue whether the Board violated section 120.57(1)(b)10, Florida Statutes (1989), by modifying the hearing officer's findings of fact. She also contends that the Board's conclusion of law that she is guilty of misconduct is actually a question of fact.
Section 120.57(1)(b)10 of the Administrative Procedures Act allows the Board to reject or modify conclusions of law, but it may not reject or modify the findings of fact unless it first determines from a review of the complete record and states with particularity in its order that such findings of fact were not based upon substantial evidence. In other words, it is the hearing officer's function to consider all the evidence presented, resolve conflicts, judge the credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence. Heifetz v. Department of Business Regulation, Div. of Alcoholic Beverages and Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985), citing State Beverage Dep't v. Ernal, Inc., 115 So.2d 566 (Fla. 3d DCA 1959). It is not always simple, however, to determine whether the ultimate question to be resolved is one of fact or a mixed question of law and fact. Is the question whether Goss was guilty of misconduct, for example, a pure question of fact?
Goss contends that the question of misconduct is one of pure fact and cites as her authority Holmes v. Turlington, 480 So.2d 150 (Fla. 1st DCA 1985). There, a female teacher was accused of exploiting a professional *1235 relationship with a student for personal gain or advantage by engaging in romantic and sexual acts with a male student by hugging and kissing him and holding his hand. During a high school senior class trip, she had allowed him to bathe and remain overnight in her hotel room after he had entered it while intoxicated. The hearing officer found no impropriety in the teacher's conduct and found that, clearly, there was no evidence to support a finding that she had entered into any relationship or dealings with the student for any sort of personal gain or advantage. This conclusion was rejected by the panel disciplining the teacher, and the First District reversed, stating that, although the hearing officer's conclusion "was stated in terms of a conclusion of law in both the recommended order and the final order, we hold that deviation from a standard of conduct is essentially an ultimate finding of fact clearly within the realm of the hearing officer's fact-finding discretion." Id. at 153. In the instant case, we do not believe that Holmes is helpful since the ultimate question  whether the teacher entered into a relationship with the student for personal gain or advantage  was directly determined by the answer to the factual question whether she had engaged in romantic and sexual activity. These are issues, as the First District stated, that are not infused with policy considerations but are determinable by ordinary methods of proof through the weighing of evidence and the judging of the credibility of witnesses, both solely the prerogative of the hearing officer as a finder of fact. Id. at 153.
The Board cites Johnson v. School Board of Dade County, 578 So.2d 387 (Fla. 3d DCA 1991), in support of its position. There, the Dade County School Board took exception to the hearing examiner's conclusion that the facts did not support a finding of gross insubordination and entered its contrary order. The teacher involved in Johnson had been instructed, following previous incidents, to refrain from touching and publicly demeaning students, even as a disciplinary measure. Johnson is helpful in the instant case since it is an example of a case where a finding of fact, to-wit: the repetition of a prohibited touching or public demeaning of a student, is not directly determinative of the ultimate question without an infusion of policy considerations. In Johnson, gross insubordination was defined as "a constant or continuing intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority." Id. at 387, n. 1. An infusion of policy is required to make the conclusion of law that a prohibited act when repeated constitutes evidence of a pattern of constant or continuing intentional refusals to obey direct and reasonable orders.
In the instant case, there seems to be no conflict in the factual finding that Goss did swerve the school bus to the left, eight to ten inches over the center line of the roadway, while yelling out of the driver's window at the student. The conflict arises over the hearing officer's determination that Goss's action could not support the charge of misconduct and the Board's determination that it did. The additional finding that Goss intentionally and recklessly steered the bus toward the student is a finding of fact by the Board that violates the requirements of section 120.57(1)(b)10 because the hearing officer's contrary finding was supported by substantial competent evidence.
The fact remains, however, that Goss unquestionably engaged in an unusual act when she caused the bus to veer to the left, over the center line of the roadway, and towards the grossly offensive student in what the hearing officer found was "an instinctive act to get [the student's] attention." It is difficult to imagine that any more attention could have been given to Goss by J.B. who was at the moment directing his offensive behavior at her. While no one was injured as a result of the swerving, the potential for injuries did exist. The student could have been hit by the bus or by another vehicle that might have been passing the school bus at the time and which might have turned to avoid the swerving bus. The passengers on the bus could have been harmed as a result of *1236 being thrown about in the bus when it swerved.
True, no accident occurred as a result of Goss's instinctive act. But it is the unusual so-called instinctive act that the Board found was a breach of the usual conduct expected of a bus driver. Immediate retaliation for gross social behavior must be guarded against by one in Goss's position. Some individuals can maintain a cool head when faced with the situation presented to Goss, others cannot, and others can after being trained to do so. Whether Goss's reaction to the unplanned test presented by this particular undisciplined student met the standards of conduct of a St. Johns County School Board bus driver was not determinable solely from the hearing officer's finding of fact that, while Goss swerved the bus, she did not swerve at J.B. or intend to hit him. Goss's reaction to the situation  using a busload of children to get J.R.'s attention  while instinctive to her, is not the reaction that all bus drivers similarly situated would have taken and is not one that was acceptable to the Board after an infusion of policy considerations.
We suspect that the hearing officer's decision was influenced by a natural human aversion to finding a nearly sixteen-year veteran with an unblemished driving record guilty of misconduct after a two-second reaction to a stressful ordeal caused by a social misfit. However, even the hearing officer was not totally able to overlook Goss's reaction since the hearing officer recommended that a loss of pay be imposed. We are constrained to affirm the conclusion of law reached and the penalty imposed by the Board.
AFFIRMED.
GRIFFIN, J., concurs in result only.
GOSHORN, C.J., dissents without opinion.