629 So.2d 226 (1993)
Edwin D. MacMILLAN, Appellant,
v.
NASSAU COUNTY SCHOOL BOARD, Appellee.
No. 92-1639.
District Court of Appeal of Florida, First District.
December 9, 1993.
Rehearing Denied January 21, 1994.
Thomas W. Brooks of Meyer & Brooks, P.A., Tallahassee, for appellant.
Brian T. Hayes, Monticello, for appellee.
PER CURIAM.
Appellant, Edwin MacMillan, is a former teacher of mathematics at Hilliard Middle-Senior High School who was suspended in May 1991 by Appellee, the Nassau County School Board, for his alleged "immorality" and "misconduct in office." The charge of immorality was dropped. Having determined in the initial administrative hearing that MacMillan's statements and behavior did not constitute misconduct in office, the hearing officer recommended that the School Board enter a final order dismissing the *227 charges and returning MacMillan to full duty with back pay and all benefits, retroactive to May 9, 1991. At the conclusion of its own proceedings, the School Board rejected the hearing officer's findings of fact and conclusions of law, incorporated the exceptions taken to the recommended order, ratified MacMillan's suspension without pay, and ordered him to be discharged from employment based on misconduct in office. After carefully reviewing the record, we have determined that the School Board rejected certain findings of fact made in the recommended order that were supported by competent substantial evidence, and that it substituted its own judgment without any showing that the initial hearing was procedurally flawed or produced faulty conclusions of law. Additionally, the School Board relied on certain school-related incidents that occurred outside the time period embraced in the specific statement of charges. Based on these errors, the School Board's final order must be reversed. See section 120.57(1)(b)(10), Fla. Stat. (1991); McPherson v. Sch. Bd. of Monroe County, 505 So.2d 682, 683 (Fla. 3d DCA 1987); Forehand v. School Board of Washington County, 481 So.2d 953, 955 (Fla. 1st DCA 1986); Heifetz v. Dep't of Bus. Reg., 475 So.2d 1277 (Fla. 1st DCA 1985). We remand the case to the School Board with directions to reinstate MacMillan to his former position with full back pay and other benefits plus interest. Section 231.36(6), Fla. Stat. (1991).
MacMillan was a nine-year veteran teacher in May 1991, when School Superintendent Craig Marsh verbally suspended him with pay based on section 231.36(6). Written confirmation of suspension followed the next day. Although the original basis of the suspension was MacMillan's alleged immorality and misconduct in office, only the latter charge remained at the time of the hearings. In a May 2, 1991 letter, the Superintendent informed MacMillan that an investigation had "revealed that at least eight female students stated that you have repeatedly made comments to them or about them which I consider as inappropriate." MacMillan was notified of his right to counsel (at his own expense) and right to a full hearing. A week later, the Superintendent recommended that the School Board formally suspend MacMillan, which suspension was ratified, but without pay, pending the hearing. The grounds for suspension were MacMillan's purported "inappropriate, lewd or sexually oriented remarks to at least eight (8) minor female students who, at the time of such suggestive conversations, stood in a custodial relationship to him." Three months after the suspension, on August 8, 1991, Superintendent Marsh filed a specific statement of charges.
Rule 6B-4.009(3), Fla. Admin. Code, defines "misconduct in office" as any violation of Rule 6B-1.001 (Code of Ethics of the Education Profession in Florida) and Rule 6B-1.006 (Principles of Professional Conduct for the Education Profession in Florida) "which is so serious as to impair the individual's effectiveness in the school system." Rule 6B-1.006(2) provides that violation of any of the Principles shall subject the individual to revocation or suspension of the teacher's certificate or to other penalties as provided by law. Subsection (3) of this rule governs the individual educator's duty to the student and, relating to the specific charges against MacMillan, states in pertinent part:
Obligation to the student requires that the individual:
(a) Shall make reasonable effort to protect the student from conditions harmful to learning and/or to the student's mental and/or physical health and/or safety.
* * * * * *
(e) Shall not intentionally expose a student to unnecessary embarrassment or disparagement.
(f) Shall not intentionally violate or deny a student's legal rights.
(g) Shall not harass or discriminate against any student on the basis of ... sex ... and shall make reasonable effort to assure that each student is protected from harassment or discrimination.
(h) Shall not exploit a relationship with a student for personal gain or advantage.
Because the context in which MacMillan made the alleged improper statements is critical to our determination of whether competent substantial evidence supported the findings of fact and conclusions of law in the *228 recommended order, we quote at length the hearing officer's general findings regarding MacMillan's typical verbal interactions with his students in the classroom.
5. Respondent has had a practice of greeting his students at random as they enter the classroom each day and while they are taking their seats and settling down to work. At all times material, these greetings were offered in the presence of students of both genders. Respondent teased the boys about sports and commented on the girls' appearance. The comments made most frequently by the Respondent to the football players were that they had not done well in the immediately preceding game. The comments made most frequently by the Respondent to all the female students were, "You're looking good; you're looking fine; you're looking hot;" or, more simply, "you're fine, you're hot." None of the comments were exclusive to any particular female student. All the comments were made out in the open, without any physical touching or aggression on Respondent's part. He made these comments with no intended sexual connotation, and no female student ever expressed to him directly that she objected to these greetings either because they sounded sexual in nature, were too familiar, or were made in the presence of the female students' male peers.
6. Generally, Respondent's comments were recognized as kidding and not taken seriously or considered objectionable by the students. There is no evidence that the Respondent's comments delayed the commencement of class, caused disruptive behavior on the part of either the male or the female students who heard them, or inhibited any student learning the academic material.
In Holmes v. Turlington, 480 So.2d 150, 153 (Fla. 1st DCA 1985), we held that "deviation from a standard of conduct is essentially an ultimate finding of fact clearly within the realm of the hearing officer's fact-finding discretion." The administrative rules on which the School Board based its rejection of the recommended order constitute the same sort of provisions governing professional conduct as were involved and discussed in Holmes.
The statement of charges specifically alleged that MacMillan's objectionable comments and conduct all occurred during the 1990-91 school year. The allegations at issue here were made in Paragraphs 4, 5, 6 and 7. We need not further address Paragraph 5, which alleged "offensive conduct" against D.P., because the record otherwise contains no reference to any such female student or to that specific allegation.

Paragraph 4
This section alleged that MacMillan "made suggestive, degrading and sexual innuendos and remarks to a minor referred to as S.L., which conduct was improper, unprofessional and intended to lead to an improper sexual relationship with said student." Our review of the testimony indicates that the record amply supports the hearing officer's findings that although certain remarks might have proved "temporarily embarrassing," S.L.'s own testimony suggests that she felt neither degraded nor humiliated by the statements. Even if we accept the conclusion of law that one remark technically violated aspirational Rule 6B-1.006(3)(e) (intentional exposure of a student to unnecessary embarrassment or disparagement), we cannot ignore the fact that the record is devoid of competent evidence proving that any violation of policy was "so serious as to impair the individual's effectiveness in the school system." There being competent substantial evidence to support the hearing officer's findings and conclusions concerning S.L., the School Board was not in a position to reject or modify that portion of the recommended order.

Paragraph 6
This section alleged that MacMillan "made improper sexual suggestions to a female student referred to as S.M." MacMillan denied that his comment included any sexual intent, and at the hearing, he provided a reasonable and logical explanation for offering tutorial assistance to S.M. in his class after school, just as he had assisted other students without incident. Although she did *229 not feel comfortable about MacMillan's offer, S.M. conceded that MacMillan's statement could be interpreted nonsexually as well. The hearing officer noted that although MacMillan perhaps "fell short in not clearly indicating all his reasoning and purpose" to S.M., she had never voiced any objection to MacMillan or otherwise indicated her discomfort over the situation. Like S.L., S.M. considered MacMillan to be a good teacher. Despite the fact that competent substantial evidence supported the hearing officer's findings and conclusions regarding MacMillan's behavior toward S.M., the School Board improperly rejected that interpretation of the facts and accepted S.M.'s interpretation of the comment as the more reasonable explanation.

Paragraph 7
This allegation alluded to "5 additional similar incidents in which Respondent, throughout the 1990-91 school year and perhaps before, made improper, suggestive and sexually oriented remarks to female students." (Emphasis added.) In the recommended order, the hearing officer concluded, "The Statement of Charges herein embraced only incidents alleged to have occurred during the 1990-1991 school year, and accordingly only those incidents proven to have occurred during that time frame may be used to discipline Respondent." We agree. See Conklin Center v. Williams, 519 So.2d 38 (Fla. 5th DCA 1987) (a party to an administrative proceeding is entitled to notice of the issues to be presented, as a matter of due process). Our review of the statement of charges indicates that all of the alleged incidents were said to have occurred during the 1990-91 school year, except that Paragraph 7 refers to some vague time "perhaps before" then. The statement of charges was never amended or clarified as to any period beyond the 1990-91 school year. The fact that the School Board based its dismissal of MacMillan partly on events that occurred outside the 1990-91 school year is a key element of MacMillan's argument for reversal of the final order. The above-quoted statement of the hearing officer manifests her concern that the record on which the School Board would base its weighty decision accurately reflect the specific incidents, and the timing thereof, giving rise to the charges. In his exceptions to the hearing officer's findings of fact and conclusions of law, Superintendent Marsh did not challenge the fact that the recommended order was based exclusively on a consideration of events during the 1990-91 school year. Under these circumstances, we think that any expansion of the scope of the initial hearing to address and determine matters not previously noticed for hearing would have violated MacMillan's due-process rights. Epic Metals Corp. v. Samari Lake East Condominium Ass'n, Inc., 547 So.2d 198 (Fla. 3d DCA 1989). MacMillan's concern about violations of due process is accentuated by the fact that, although his suspension occurred in early May 1991, he was not provided with a statement of charges until August of that year.
These allegations were addressed in testimony presented by female students D.K., T.M., J.S., and S.H., whose testimony indicated either that the comments and acts at issue occurred outside the time period contemplated in the statement of charges or else failed to meet the prerequisites for teacher suspension or dismissal. Regarding the various statements at issue in the proceedings below, MacMillan steadfastly denied ever intending to say anything improper or to harm a student, and the hearing officer so found. Crawley v. Department of Highway Safety and Motor Vehicles, 616 So.2d 1061, 1063 (Fla. 1st DCA 1993) (determination of whether violation of DHSMV policy was willful was a factual matter for the hearing officer, which the reviewing agency could not reject if supported by competent substantial evidence). From our consideration of the overall record and the detailed explanation offered by the hearing officer to support her findings of fact, we must disagree with the School Board's determination that no reasonable person could have arrived at the same result as the hearing officer. That is not to say that we condone MacMillan's admittedly poor judgment in making some of the disputed remarks. Where a school board seeks to dismiss a teacher on the basis of misconduct in office, it must establish each and every element of the charge. See Jenkins v. State *230 Board of Education, 399 So.2d 103 (Fla. 1st DCA 1981).
We reiterate that Rule 6B-4.009(3) defines misconduct in office as a violation of the Code of Ethics and the Principles of Professional Conduct "which is so serious as to impair the individual's effectiveness in the school system." School Superintendent Marsh opined that MacMillan's effectiveness as a teacher had been seriously impaired due to the charged behavior, and that termination was the only appropriate penalty for MacMillan's acts.
Considering the severity of the charges and the number of students who gave live testimony, we find it striking that the students consistently stated that MacMillan was "generally well-regarded" and was "everyone's favorite teacher." The record supports the hearing officer's conclusion as to the issue of effectiveness:
The testimony that Respondent's actions establish a pattern of serious misconduct is not borne out by the record evidence, nor has it been established that Respondent's actions have rendered him so ineffective as a teacher that he should be dismissed in the face of affirmative evidence of good teaching skills. It also has not been established how Respondent's proven conduct, when separated from the allegations not proven, affected Respondent's employment or effectiveness in the community apart from the notoriety resulting from Petitioner's own investigation.
Other than the Superintendent's conclusory remarks, we find no evidence demonstrating a loss of effectiveness in the school system. Accordingly, the order dismissing MacMillan must be reversed. Baker v. School Board of Marion County, 450 So.2d 1194 (Fla. 5th DCA 1984) (publicity attendant to allegations of misconduct in office and immorality was not, of itself, a proper basis for a finding of impaired effectiveness as a teacher); Braddock v. School Board of Nassau County, 455 So.2d 394 (Fla. 1st DCA 1984).
The final order of the School Board is REVERSED, with directions to reinstate MacMillan to his former position with full back pay and other benefits plus interest.
MINER, WEBSTER and MICKLE, JJ., concur.