516 So.2d 292 (1987)
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, d/b/a Heartland of Palm Beach, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. BQ-22.
District Court of Appeal of Florida, First District.
December 1, 1987.
*293 G. Steven Pfeiffer of Laramore & Clark, P.A., Tallahassee, for appellant.
R.S. Power, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
PER CURIAM.
This cause is before us on appeal from an order entered by the Department of Health and Rehabilitative Services (HRS) rejecting the recommendation of the hearing officer (HO) and denying appellant a certificate of need (CON) to construct a nursing home in Palm Beach County. We reverse.
Appellant has raised three issues: (1) whether HRS's determination that appellant inappropriately amended its application is arbitrary, capricious, and not in accordance with the law; (2) whether HRS's determination that exceptional circumstances do not exist in Palm Beach County is arbitrary, capricious, and not in accordance with the law; and (3) whether HRS's action is contrary to action that has been taken in similar cases, and there is no reasonable explanation for the different results.
Appellant applied for a CON for 120 community nursing home beds in Palm Beach County. HRS gave notice of its initial intent to deny the application, and appellant requested a formal administrative hearing. No one petitioned to intervene. Final hearing had been scheduled to commence on February 3, 1986. On January 22, 1986, the parties filed a joint motion for continuance. In the motion, the parties agreed:
(1) There was no need for nursing home beds in Palm Beach County pursuant to HRS's application of the mathematical formula outlined in Rule 10-5.11(21)(b), Florida Administrative Code.
(2) Rule 10-5.11(21)(b)10, Florida Administrative Code, provides a "special exception" to the rule which allows a petitioner to obtain a CON when HRS's strict application of the formula results in zero bed need.
(3) Appellant was in the process of gathering data and documentation to support issuance of a CON under the "special exception" provision to meet needs of at least two medically underserved groups  Alzheimer's disease and subacute care patients.
(4) Appellant had contacted various officials in Palm Beach County to verifiably quantify the specific need that existed for special services and facilities for Alzheimer's disease and subacute care patients. Appellant was also in the process of developing a survey of physicians which would quantify specific placement problems that physicians had in placing those special groups of patients. Appellant was unable to complete its study but would be able to complete its study if a continuance of 60 days was permitted.
(5) Appellant informed HRS of its progress in gathering and documenting the necessary information to support issuance of a CON. The data and documentation procured by appellant on the need of Alzheimer's disease and subacute care patients would support an amended updated application to be filed by appellant.
*294 (6) HRS assured appellant that it would give serious consideration to its updated application and supporting documents. HRS agreed that if the updated application established the need for a nursing home to serve Alzheimer's disease and subacute care patients in Palm Beach County, there was a good prospect of settling the case.
(7) A continuance of the final hearing would allow appellant sufficient time to complete the gathering of data and documentation to support an updated amended application demonstrating need for community nursing home beds for underserved groups, including Alzheimer's disease and subacute care patients.
Appellant's initial application was not in evidence.
The parties entered into a prehearing stipulation which stated:
The issues of fact to be litigated are whether there is a need for the nursing home beds proposed by HRC [appellant]. Specifically, the issues of fact to be litigated are whether there are population groups in Palm Beach County who have a need for nursing home services, but are denied access to currently licensed beds because existing facilities do not provide adequate care, treatment, and programs to meet their needs. These population groups are patients who suffer from Alzheimer's disease or related disorders, and patients who are discharged from hospitals requiring higher levels of care than are provided in existing facilities in Palm Beach County.
On April 3 and 4, 1986, a hearing was conducted. At the hearing, HRS objected to presentation of evidence by appellant regarding the special needs of persons who suffer from Alzheimer's disease.
The parties submitted proposed recommended orders. On July 8, 1986, the HO entered a recommended order. In part, he determined that no one intervened; that no facilities in Palm Beach County offer appropriate services for victims of Alzheimer's disease (except perhaps Darcy Hall, which provides adult day care); that HRS estimates in 1986 as many as 27,200 victims of the disease live in Palm Beach County, of which 80 percent will require custodial care in the future; and that appellant is proposing to develop a nursing home designed and staffed to provide care and treatment to meet the special needs of persons who are suffering from Alzheimer's disease. Noting the failure of existing facilities to provide appropriate care in conjunction with the foregoing statistics, the HO found that the proposed facility is needed. The HO recommended that HRS issue a CON for a 120-bed nursing home that would be limited and conditioned upon all beds being dedicated only to the provision of services and facilities for victims of Alzheimer's disease.
The HO found as fact that Alzheimer's disease is a degenerative process of the brain which is characterized by memory loss, communicative problems, confusion, disorientation, incontinence, and social dysfunctions. The disease is progressive. In the final stage, an Alzheimer's disease victim will lose all ability to communicate and may become bedridden and comatose. Victims of the disease do not recover; their condition steadily deteriorates during the course of the illness until they die. Alzheimer's disease victims present considerable difficulty for care givers. Representatives of the Palm Beach County Alzheimer's Disease and Related Disorders Association, HRS District IX Local Health Council, and Palm Beach County Hospital are charged with being familiar with local facilities that provide care for Alzheimer's disease victims. Each testified that there are no facilities in Palm Beach County that provide appropriate care and treatment for victims of Alzheimer's disease.
Some existing nursing homes in Palm Beach County accept victims of Alzheimer's disease in their facilities. There are no nursing homes or other facilities in the county that offer special programs and an environment for victims of Alzheimer's disease. A survey of 36 physicians was conducted by a board certified neurologist. The study, which was done on a small segment of the medical community in Palm Beach County, reflected that this small segment was unable to find appropriate *295 inpatient placement for 135 patients and was unable to locate suitable day care facilities for 150 patients during the prior year.
Appellant has proposed to develop a facility that would be designed and staffed to provide the sort of care and treatment which would meet the special and unique needs of persons who suffer from Alzheimer's disease. The facility would be developed so as to provide a complete continuum of care to patients during all stages of the illness.
No exceptions to the recommended order were filed.
In the final order, HRS adopted the findings of fact set forth in the recommended order, with the exception of the finding that there is a need for the Alzheimer's facility proposed by appellant. HRS concluded that finding of need was based on exceptional circumstances and was a conclusion of law. HRS also concluded that appellant inappropriately amended its original CON application and that special needs of persons who suffer from Alzheimer's disease do not constitute an exceptional circumstance justifying an award of a CON.
Under issue one, we find that HRS erred in concluding that appellant amended its CON application by proposing to serve victims of Alzheimer's disease. The only new element in the application was that appellant sought approval of its application by showing that there was a "not normal" condition in Palm Beach County. The assurance given by HRS when agreeing to a continuance, that it would consider appellant's updated application and evidence showing need based on special care of patients suffering from Alzheimer's disease, amounted to a recognition that this basis of need and supporting information fell within the general scope of the basis of need asserted in the original application. HRS has shown no reason for us to rule to the contrary. The contentions made in support of its complete change of position on this issue are insufficient for the following reasons.
HRS erroneously relies on Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1986), for the proposition that appellant could not present evidence regarding specific needs of identified population groups in Palm Beach County. In Gulf Court, this court was presented with the issue of whether an applicant was entitled to comparative review with applicants who applied in a prior "batching cycle." This court held that comparative review was mandated because the prior applicants amended their applications to seek approval within the planning horizon of the latter applicant. Gulf Court did not address an application based upon exceptional circumstances and did not prohibit presentation of updated current planning information at a formal hearing. On rehearing, this court limited its decision to the precise issues presented.
Moreover, in the joint motion to continue, HRS acknowledged that appellant needed the continuance to gather data respecting the special needs of Alzheimer's disease patients. HRS promised to give serious consideration to updated information and supporting documentation. Likewise, in the prehearing stipulation, both parties agreed that the issues of fact to be litigated were whether there is a need for the nursing home beds proposed by appellant and whether patients who suffer from Alzheimer's disease who need nursing home services are denied access to existing facilities because existing facilities do not offer programs to meet their needs.
Accordingly, HRS waived any procedural irregularity and affirmatively chose to consider appellant's proposal through evidence presented at the formal hearing. Once the parties stipulate as to the issues, they are generally bound by them. See Spitzer v. Bartlett Brothers Roofing, 437 So.2d 758 (Fla. 1st DCA 1983) (a workers' compensation case wherein the employer and carrier stipulated the claimant was entitled to three months of catastrophic loss benefits).
We also reverse issue two. The standard of review regarding a CON application is whether the action is arbitrary, capricious, and not in compliance with the *296 statutes and rules. § 381.494(8)(e), Fla. Stat.; Humana, Inc. v. Department of Health and Rehabilitative Services, 492 So.2d 388 (Fla. 4th DCA 1986). Where the issue is one of discretion, the reviewing court should not substitute its judgment for that of the agency. § 120.68(12), Fla. Stat.
The issue of whether the facts justify an award of a CON due to "not normal" circumstances is a conclusion of law. Humana, Inc. v. Department of Health and Rehabilitative Services; Federal Property Management Corporation v. Department of Health and Rehabilitative Services, 482 So.2d 475 (Fla. 1st DCA 1986). On the other hand, a finding that there are insufficient facilities (beds) in Palm Beach County to provide adequate beds and care to Alzheimer's disease patients actually seeking such care in the county is a question of fact.
Although HRS has broad discretion, it is not free to ignore some of the factors it is required to consider in evaluating CON applications. NME Hospitals v. Department of Health and Rehabilitative Services, 494 So.2d 256 (Fla. 1st DCA 1986). An agency does not have the discretion to ignore the HO's findings of fact and to substitute its findings of fact for those of the HO unless it first determines that the findings of fact in the recommended order are not supported by competent, substantial evidence. Holmes v. Turlington, 480 So.2d 150 (Fla. 1st DCA 1985).
Addressing a similar issue in Balsam v. Department of Health and Rehabilitative Services, 486 So.2d 1341 (Fla. 1st DCA 1986), this court reversed an order denying a CON for a psychiatric and substance abuse hospital. In that case, HRS denied the CON, contrary to the HO's recommended order, because no numerical need was indicated by the rule methodology. This court concluded that HRS acted arbitrarily and contrary to the law in failing to consider the actual quality of care rendered by the existing facilities.
As in Balsam, HRS in this case has ignored the HO's findings regarding the lack of programs for identified patient groups within the service area. HRS has asserted that since existing facilities accept Alzheimer's disease patients and may provide the special services at issue, there is no need to inquire into the propriety of care that is offered. In Balsam, this court stated that HRS cannot reject an HO's findings of fact by treating the issue as one of policy; the agency's function is to apply its policy to the facts so long as the facts are supported by competent, substantial evidence.
Pertinent facts found by the HO in this case and adopted by HRS are: (1) patients who suffer from Alzheimer's disease require specialized care in facilities that are directed to their particular disability; (2) no existing facilities in Palm Beach County provide these special services; (3) physicians in Palm Beach County during the year prior to the hearing were unable to find appropriate placement for their patients who suffer from Alzheimer's disease; (4) at least 16,597 people in Palm Beach County suffer from the disease, and 80 percent of them will require custodial care; and (5) no one intervened in the proceedings. In light of those facts, HRS erred in concluding:
In the face of the surplus of nursing home beds in Palm Beach County, modification and utilization of existing facilities would be a more appropriate use of health care resources. If there is in fact consumer demand for such services proposed by petitioner, such modifications can be expected.
Not only is that conclusion inconsistent with the findings of fact in the recommended order, but it is also not supported by record evidence. There is no showing in the record that current providers of approved licensed beds are willing or able to modify or utilize any of their facilities for purposes of servicing Alzheimer's disease patients. On the contrary, the HO found that there are no nursing homes (except perhaps Darcy Hall, which provides adult day care) or other facilities in the county which offer special programs and an environment for Alzheimer's disease patients.
*297 In sum, HRS erred in concluding that appellant amended its application, and HRS is bound by its stipulation; therefore, HRS can and must consider the HO's findings of fact, which are supported by competent, substantial evidence. In reviewing those facts, HRS did not exercise its discretion in compliance with the applicable statutes and rules when it declined to consider the differences between the method of care offered by existing providers and those proposed by the applicant.
In view of our disposition, we do not consider issue three. Accordingly, we REVERSE and REMAND for reconsideration and entry of an order consistent with this opinion.
THOMPSON, J., and MINER, CHARLES E., Associate Judge, concur.
ERVIN, J., concurs in part and dissents in part.
ERVIN, Judge, concurring in part and dissenting in part.
I concur with the majority in its holding that HRS erred in finding that appellant had incorrectly amended its CON application by proposing to serve victims of Alzheimer's disease, for the reasons stated in the majority's opinion. The reversal of that portion of HRS's order holding that appellant inappropriately amended its CON application by proposing to serve victims of Alzheimer's disease means only that HRS was required to consider the amended application on its merits. The remedy for HRS's erroneous action obviously does not include reversal with directions that the CON issue. I disagree, however, with the majority's reversal as to issue two.
Because appellant was unable to establish need for any additional community nursing home beds in Palm Beach County pursuant to the mathematical formula contained in HRS's rule,[1] the applicant has attempted to justify the grant of its certificate of need (CON) pursuant to the not-normal exception of Florida Administrative Code Rule 10-5.11(21)(b)10,[2] which provides:
In the event that the net bed allocation is zero, the applicant may demonstrate that circumstances exist to justify the approval of additional beds under the other relevant criteria specifically contained in the Department's Rule 10-5.011. Specifically, the applicant may show that persons using existing and like services are in need of nursing home care but will be unable to access nursing home services currently licensed or approved within the subdistrict. Under this provision, the applicant must demonstrate that those persons with a documented need for nursing home services have been denied access to currently licensed but unoccupied beds or that the number of persons with a documented need exceeds the number of licensed unoccupied and currently approved nursing home beds. Existing and like services shall include the following as defined in statute or rule, adult congregate living facilities, adult foster homes, homes for special services, home health services, adult day health care, adult day care, community care for the elderly, and home care for the elderly. Patients' need for nursing home care must be documented by the attending physicians' plans of care or orders, assessments performed by staff of the Department of Health and Rehabilitative Services or equivalent assessments performed by attending physicians indicating need for nursing home care.
(e.s.)
The rule recognizes, as the recommended order finds, that there are three ways under the special exception to the rule for an applicant seeking a CON for community nursing home beds to demonstrate need, even though the rule formula reflects a zero-bed need: (1) documentation by the attending physicians' plans or care or orders, (2) assessments performed by staff of HRS, or (3) equivalent assessments performed by attending physicians indicating *298 need for nursing home care. It is obvious that only the last method is applicable to the facts at bar. The following excerpt from the hearing officer's findings of fact discloses the evidence offered by applicant in its effort to satisfy the equivalent assessments method:
Dr. Eugene Loeser is a physician, board certified in neurology, and is in private practice in Jupiter, Florida. Dr. Loeser created a list of questions to ask physicians in Palm Beach County to explore the need for special nursing home programs for Alzheimer's disease patients, and that list of questions is HRS Exhibit 8. Using these questions Dr. Loeser conducted a survey of 36 physicians in Palm Beach County, which included 8 family practitioners, 10 internists, 14 neurologists, 2 neurosurgeons, and 2 psychiatrists. There are approximately 1,000 physicians in Palm Beach County, and Dr. Loeser admitted that his survey was only of a small percentage. Dr. Loeser did not attempt to make the survey statistically valid. The physicians contacted were selected from the telephone book from Jupiter in the north to Lake Worth in the south. Dr. Loeser attempted to contact representatives of several specialities. The specialities were selected as those likely to see Alzheimer's patients. Of the 36 physicians contacted, 35 had seen patients having Alzheimer's disease. Of these, 27 physicians had "difficulty in finding appropriate placement" for these patients in terms of supervision, care and treatment. The same number of physicians felt that facilities with appropriate programs for placement of Alzheimer's disease or similar disorder patients were not presently available in Palm Beach County. From the responses, Dr. Loeser estimated that these physicians had seen somewhat more than 600 patients suffering from Alzheimer's disease or related disorders in the last year. Dr. Loeser personally estimated that he typically had difficulty finding a treatment and care facility for about 10 Alzheimer's disease patients annually. He then estimated from responses received that the physicians surveyed were unable to find an appropriate program for about 135 patients annually. Dr. Loeser further estimated that among his own patients, about one or two per week needed some form of day care, and from the responses of the physicians in the survey, estimated that such physicians annually had 150 patients needing day care.
I do not know why the agency could not determine, within the wide discretion conferred upon it, that the above evidence simply does not constitute, under the requirements of its own rule, competent and substantial evidence reflecting need for such additional care, particularly in view of the somewhat dubious survey of 36 physicians out of a total of 1000, conducted by Dr. Loeser, which he admitted was not "statistically valid," as well as the questionable conclusions drawn by Dr. Loeser from the answers given. Regardless of whatever statistical relevancy the survey may have had to a demonstration of need, it simply was not relevant to the crucial issue of whether the survey could be considered an equivalent assessment to that conducted by the staff of HRS. The recommended order correctly states that the equivalent assessments method contemplates "some sort of survey equivalent to the types done by HRS." The hearing officer then leaps to the conclusion, without any evidence in the record, that the survey or assessment conducted by Dr. Loeser was the equivalent of assessments conducted by HRS. That conclusion was belied, however, by the absence of any proof reflecting the types of surveys commonly conducted by HRS for the purpose of establishing need for nursing home care.
The hearing officer's determination that need had been shown for a 120-bed community nursing home facility in Palm Beach County was moreover undercut by his inconsistent finding that, from a fiscal point of view, the applicant proposed not to deny admissions to persons not having Alzheimer's disease, and no less than 60 beds would at first be dedicated to such patients.
We must remember that HRS's "determination that factors other than the numerical need projected by the rule do not reach the level of exceptional circumstances so as to justify deviation from the rule methodology, *299 is a conclusion of law and is therefore a matter within the permissive range of agency discretion." Federal Property Management Corp. v. Department of Health and Rehabilitative Services, 482 So.2d 475, 477 (Fla. 1st DCA 1986). See also Humana, Inc. v. Department of Health and Rehabilitative Services, 492 So.2d 388, 392 (Fla. 4th DCA 1986).
Although the majority declined to address issue three, because of its disposition of issue two, I agree with appellant that the agency's inconsistency as to its action taken in similar cases requires relief. The correct remedy, in my judgment, is to remand the case to the agency once the court finds the exercise of the agency's discretion to be "inconsistent with an officially stated agency policy or prior agency practice, if deviation therefrom is not explained by the agency; ... ." See Section 120.68(12)(c), Florida Statutes. I agree with appellant that HRS has failed to explain adequately its deviation from prior agency practice, see E.M. Watkins & Co., Inc. v. Board of Regents, 414 So.2d 583, 588 (Fla. 1st DCA), review denied, 421 So.2d 67 (Fla. 1982) (administrative agencies are not foreclosed from deviating from their own rules, but must adequately explain their deviation in their order), and would therefore remand the cause to the agency for further explanation.
NOTES
[1] The formula in fact calculated a net surplus of 511 community nursing home beds in Palm Beach County for the 1987 planning horizon.
[2] Since renumbered 10-5.011(k)2.j.