491 S.E.2d 592

**Stephen C. LLOYD, M.D., d/b/a South Carolina Medical Endoscopy Center, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Respondent.**

No. 2717.

Court of Appeals of South Carolina.

Heard March 5, 1997.

Decided Sept. 2, 1997.

Rehearing Denied Oct. 23, 1997.

A. Camden Lewis, Pete Kulmala and P. Benjamin Zuckerman, all of Lewis, Babcock & Hawkins, Columbia, for appellant.

Thomas G. Eppink, of the Office of General Counsel, South Carolina Department of Health and Environmental Control, Columbia, for respondent.

HOWARD, Judge.

This is an appeal from the denial of a Certificate of Need (CON) to build an endoscopy center in Columbia, South Carolina. The South Carolina Department of Health and Environmental Control (DHEC) denied the CON to Stephen C. Lloyd, M.D., d/b/a South Carolina Medical Endoscopy Center (Lloyd). The circuit court affirmed. We reverse and remand.

## *PROCEDURAL HISTORY*

Lloyd is a family practice physician who performs colonscopies during physical exams to remove pre-cancerous polyps, reducing the chance of developing colon cancer. He applied for a CON in 1991 to build an endoscopy center in Richland County. Lloyd conceded there were existing hospital and

ambulatory facilities to accommodate these procedures, but he claimed a new facility was necessary because primary care physicians were not allowed to use them. According to Lloyd, hospital credentialing requirements require endoscopic experience which most primary care physicians do not have, and they cannot obtain this experience because specialists control outpatient endoscopy facilities and are unwilling to allow primary care physicians to assist.

On February 22, 1992, DHEC staff proposed denial of the CON, and Lloyd sought a contested hearing review. This was referred to a hearing officer, who concluded Lloyd had demonstrated an unmet medical need, but had failed to show that utilization of existing facilities could not feasibly be expanded to accommodate this need. He found this to be inconsistent with the project review criteria found in S.C.Code Ann.Regs. 61–15 § 802(20) (Supp.1992)[1], which reads:

> (20) Existing Facilities: Current utilization of existing facilities in the applicant's service area should be appropriate and methods for expanding utilization of existing services should not be available.

*Id.*

The hearing officer concluded review was limited to the existence of sufficient physical facilities in the geographic area which could be utilized for these procedures, even though limitations placed on their use by specialists in the medical community made them unavailable to primary care physicians for the stated purpose. Consequently, he recommended denial of the CON.

Lloyd then proceeded to a full review of his application before DHEC's Board. He argued the staff and hearing officer had improperly limited the inquiry to the need for expansion of existing *facilities,* whereas Lloyd had demonstrated a need for the expansion of *services* to be provided at the proposed facilities.[2] The CON was denied in an order

---

1. This regulation was rewritten in 1993, and this subsection was deleted. *See* S.C.Code Ann.Regs. 61–15 § 802 (Supp.1996). We note, however, the new project review criteria still prohibits only *unnecessary* duplication of facilities.

2. Lloyd did not provide any mathematical or statistical analysis of the existing capacity for endoscopy or estimates of the number of endoscopic procedures to be performed in the future.

adopting the findings and recommendations of the hearing officer. Lloyd appealed to the circuit court, which affirmed the final denial.

Lloyd first asserts DHEC failed to consider the service to be provided, focusing only on the existence of physical facilities in contravention of the clear wording of S.C.Code Ann. § 44–7–110 to –3230 (Supp.1996) and the regulations promulgated under these statutes. Second, he argues DHEC was arbitrary in its decision because it subsequently granted a CON to another applicant, Columbia Endoscopy Center, after analyzing the services it proposed to provide and finding a need for additional facilities. Lloyd claims these conclusions are inconsistent with the prior rulings by the DHEC staff and hearing officer and subsequent ruling by the Board in this case.

## SCOPE OF REVIEW

■■ Reviewing a decision of an administrative agency, the circuit court sits as an appellate court. *Kiawah Resort Assocs. v. South Carolina Tax Comm'n,* 318 S.C. 502, 458 S.E.2d 542 (1995). The findings of fact of an agency can be set aside only if unsupported by substantial evidence. S.C.Code Ann. § 1–23–380(A)(6)(e) (Supp.1996); *Roper Hosp. v. Board of South Carolina Dep't of Health & Envtl. Control,* 306 S.C. 138, 410 S.E.2d 558 (1991). The court must not substitute its judgment for that of the agency, and a judgment upon which reasonable men might differ will not be set aside. *Byerly Hosp. v. South Carolina State Health & Human Servs. Fin. Comm'n,* 319 S.C. 225, 460 S.E.2d 383 (1995).

■■ "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached." *Rodney v. Michelin Tire Corp.,* 320 S.C. 515, 519, 466 S.E.2d 357, 359 (1996). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an Administrative Agency's finding from being supported by substantial evidence." *Grant v. South Carolina Coastal Council,* 319 S.C. 348, 353, 461 S.E.2d 388, 391 (1995) (quoting *Palmetto Alliance, Inc. v. South Carolina Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984)). Moreover, neither an appel-

late court nor a circuit court may substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. *Id.*

This same scope of review is codified in the Administrative Procedures Act in the following provision:

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–380(A)(6) (Supp.1996).

The Administrative Procedures Act requires that a final decision in a contested case include findings of fact and conclusions of law. S.C.Code Ann. § 1–23–350 (1986). Where the findings of fact are set forth in statutory language, they must be accompanied by a concise and explicit statement of the underlying facts supporting the findings. *Id.* By requiring this degree of detail the court is able to ascertain the factual and analytical basis of the decision. *Seabrook Island Property Owners Ass'n v. South Carolina Pub. Serv. Comm'n,* 303 S.C. 493, 401 S.E.2d 672 (1991); *Cloyd v. Mabry,* 295 S.C. 86, 367 S.E.2d 171 (Ct.App.1988). If findings do not rationally support the conclusions reached, or if the law is misapplied, then reversal is required if substantial rights of the appellant are thereby prejudiced. S.C.Code Ann. § 1–23–380(A)(6).

## DISCUSSION

### I.

The purpose of the State Certification of Need and Health Facility Licensure Act (the Act), S.C.Code Ann. § 44–7–110 to –3230 (Supp.1996), is stated as follows:

The purpose of this article is to promote cost containment, prevent unnecessary duplication of health care facilities and services, guide the establishment of health facilities and services which will best serve public needs, and ensure that high quality services are provided in health facilities in this State.

S.C.Code Ann. § 44–7–120 (Supp.1996).

DHEC administers the Act and is also charged with the duty of preparing and publishing a state health plan and providing regulations to carry out its duties. S.C.Code Ann. § 44–7–120(2), (3). DHEC is required to adopt Project Review Criteria to provide a determination of need. S.C.Code Ann. § 44–7–190 (Supp.1996). The need criteria to be addressed must include:

... demographic needs, appropriate distribution, and utilization; accessibility to underserved groups; availability of facilities and services without regard to ability to pay; absence of less costly and more effective alternatives; appropriate financial considerations to include method of financing, financial feasibility, and cost containment; consideration of impact on health systems resources; site and building suitability; consideration of quality of care; and relevant special considerations as may be appropriate.

*Id.* South Carolina Code Ann.Regs. 61–15 § 802(20) (Supp. 1992), which was a part of the project review criteria enacted pursuant to Section 44–7–190, is the regulation which the hearing officer concluded was not met by Lloyd's application, thereby mandating denial of the CON.

For an adequate understanding of the first issue on appeal, review of the factual findings and the conclusions reached by the hearing officer is necessary, keeping in mind the Board adopted those findings and conclusions as its own.

The hearing officer first found that there were four existing endoscopy facilities in the Columbia metropolitan area, three of which are hospital based. He found there was a collective "excess of capacity" at these facilities. Lloyd does not take issue with these findings. He also found "endoscopy can *in principle* be performed in a physician's office." (Emphasis added).

The hearing officer next made two critical findings which we quote *verbatim* because of their significance. These are:

3. The physicians who perform endoscopic procedures at the existing facilities are primarily sub-specialists such as gastroenterologists, general surgeons, or colorectal surgeons. Although primary care physicians such as family practitioners or internists can become qualified to do endoscopy, very few are permitted to do so because of credentialing policies at the existing facilities. The issue of credentialing for endoscopy has become very controversial as between these segments of the medical community.

4. Endoscopy is very useful, *inter alia*, for the early diagnosis and limited treatment of colorectal cancer as well as pre-cancerous conditions. Under the prevailing practice, a primary care physician typically refers a patient who is a candidate for endoscopy to a specialist. This pattern causes duplication of medical service as between the primary care physician and the specialist and results in increased cost to the patient or payor. Additionally, patients often resist referral to specialists with whom they have no continuing relationship. These factors can result in patients not receiving endoscopic services which are medically indicated and in the under-utilization of endoscopy as a routine screening procedure. Thus strong practical reasons favor giving primary care physicians the ability to perform endoscopy directly.

The hearing officer then found: (6) Lloyd failed to demonstrate that a substantial number of primary care physicians seek the opportunity to perform endoscopy; (7) there was both support and opposition in the medical community for the project; (8) the proposed facility charge would be substantially less than prevailing charges; and (9) the proposed project would not have an adverse impact on existing facilities.

In summary, the hearing officer found endoscopic procedures at the proposed facility would cost less money, have no adverse impact on existing facilities, and provide a very useful early diagnosis and treatment tool for colorectal cancer. He also found strong practical reasons favored giving primary care physicians the ability to perform endoscopy directly, yet

primary care physicians were excluded from using existing endoscopic facilities.

The hearing officer then made diametrically opposed conclusions which form the basis for the recommendation of denial. These are: (10) that Lloyd had *not* demonstrated "an unmet need for endoscopic service facilities in the Columbia metropolitan area" and (11) that the project "would constitute an *unnecessary* duplication of existing services." (Emphasis added).

In light of these findings, there appears no justification for the adverse conclusions unless the unavailability of existing facilities to primary care physicians is not a proper consideration in determining need. Both the hearing officer and the Board declined to consider this lack of access. They narrowly defined the issue as one of "facilities" and not "services" to avoid evaluating opposing medical positions, which they considered to be a credentialing issue beyond the scope of the Act. DHEC maintains this position on appeal, arguing this is a policy choice which is a proper interpretation of their role as the administering agency. The first question presented then is whether DHEC can adopt a mechanical test which focuses only on capacity to determine the need for new facilities, ignoring circumstances which may affect the availability of services at those facilities, and still fulfill its role in such a way as to give effect to the purposes explicitly stated in the Act.

It is well established that "construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. South Carolina Bd. of Examiners in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987). Even so, an administrative construction "affords no basis for the perpetuation of a patently erroneous application of the statute." *Monroe v. Livingston*, 251 S.C. 214, 217, 161 S.E.2d 243, 244 (1968). In this regard, "[w]here the terms of the statute are clear, the court must apply those terms according to their literal meaning." *Paschal v. State Election Comm'n*, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995). An appellate court cannot construe a statute without regard to its plain meaning and may not resort to a forced interpretation in

an attempt to expand or limit the scope of a statute. *Berkebile v. Outen*, 311 S.C. 50, 426 S.E.2d 760 (1993).

 The plain language of S.C.Code Ann. § 44–7–120 and of the project review criteria requires a comprehensive evaluation of an application in light of the stated purposes. This includes not only whether a facility may duplicate existing facilities, but the relative merit of allowing that duplication to promote cost containment and the establishment of high quality health facilities and services. These purposes are plainly set forth in the Act and in the regulations. That is why the Act discourages only *unnecessary* duplication. Nowhere in the Act does it state that a proposed facility is always unnecessary if there are existing facilities which are not presently utilized at full capacity. A proposed facility is only unnecessary to the extent it does not promote the purposes of the Act as set forth in S.C.Code Ann. § 44–7–120. There is no logical method by which DHEC can evaluate necessity without considering the services to be provided at the facility and how they relate to services at existing facilities.

We need only refer to the plain wording of the Act to reach this conclusion. Section 44–7–190 specifically requires consideration of "... utilization; accessibility to underserved groups; ... absence of less costly and more effective alternatives; appropriate financial considerations to include ... cost containment; consideration of impact on health system resources; ... consideration of quality of care; and relevant special considerations as may be appropriate." S.C.Code Ann. § 44–7–190 (Supp.1996).

To comply with this statute, DHEC adopted the project review criteria found in S.C.Code Ann.Regs. 61–15 § 802 (Supp.1992). The hearing officer relied upon § 802(20) as the basis for denial. Yet this regulation compelled consideration of the utilization of existing facilities and required that "methods for expanding utilization of existing services should not be available." S.C.Code Ann.Regs. 61–15 § 802(20) (Supp.1992). The hearing officer specifically found that Lloyd and other primary care practitioners could not use existing facilities. This is a factual finding that there is no available method for expanding the utilization of existing services. He also found as a fact that requiring referral to specialists for this proce-

dure caused a duplication of medical services which increased costs and discouraged patients from including this screening as a part of a routine physical exam. These findings support the conclusion that granting a CON to Lloyd would promote cost containment, increase the quality and accessibility of health care and promote a more effective alternative to present colon cancer treatment.

To ignore the obvious relationship of these findings of fact to the overall, explicitly stated purposes of the Act in favor of an overly simplistic mathematical or mechanical test is to allow substance over form. We are mindful of the complexity facing DHEC when confronted by emerging medical opinions on scientifically complex issues presented by opposing factions of the medical community. We are equally aware of the complex nature of current economic trends in healthcare, which often result in the forging of unlikely economic relationships in response to new competition and call into question the rationale underlying the Act.[3]

However, in situations where the legislature has taken action on a particular issue through the enactment of a statute, the court is limited to the construction and interpretation of the statute. *Barnwell v. Barber–Colman Co.,* 301 S.C. 534, 393 S.E.2d 162 (1989). As stated in *Barber–Colman:*

It is perhaps unnecessary to say that Courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the Legislature. They cannot read into a statute something that is not within the manifest intention of the Legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. The responsibility for the justice or wisdom of the legislation rests with the Legislature, and it is the province of the Courts to construe, not to make, the laws.

---

**3.** *See* Joshua A. Newberg, *In Defense of Aston Park: The Case For State Substantive Due Process Review of Health Care Regulation,* 68 N.C.L.Rev. 253 (1990).

*Barnwell v. Barber–Colman Co.*, 301 S.C. at 538, 393 S.E.2d at 163 (quoting *Creech v. South Carolina Pub. Serv. Auth.*, 200 S.C. 127, 146, 20 S.E.2d 645, 652 (1942)).

Thus, even though the medical issues may be complex and disputed, the role of DHEC under the Act cannot be relegated to that of a zoning board. The significance of physical facilities lies in their relationship to and impact upon the cost and quality of health care to the people served; as explicitly stated in S.C.Code Ann. § 44–7–120. There is no way to properly evaluate this relationship and impact without considering the full reality of existing circumstances, including any medically imposed barriers to utilization.

Although we have not confronted this issue until now in South Carolina, we find the Florida case of *Health Care & Retirement Corp. of America v. Dep't of Health & Rehabilitative Servs.*, 516 So.2d 292 (Fla.Dist.Ct.App.1987), to be instructive. In that case the hearing officer recommended approval of a CON to build a nursing facility in Palm Beach County, Florida to provide specialized care for Alzheimer patients; even though, there was an admitted surplus of existing nursing home beds in the service area. The Department of Health and Rehabilitative Services (HRS) adopted the hearing officer's findings of fact, but made a policy decision not to consider the differences between the method of care offered by existing providers and those proposed by the applicant. Instead, HRS concluded that in the face of a surplus of nursing home beds in the county, modification and utilization of existing facilities would be more appropriate. HRS reasoned if there is in fact consumer demand for such services proposed by the petitioner, such modifications can be expected.

The First District Court of Appeals for Florida reversed, pointing out that HRS did not exercise its discretion in compliance with the applicable statutes and rules when it declined to consider the differences between the method of care offered by existing providers and those proposed by the applicant. *Id.* at 297. The court pointed out that HRS's conclusion that modification of existing facilities would be more appropriate was inconsistent with the findings of fact and wholly unsupported by the record evidence. *Id.* at 296.

An agency is not clothed with the authority to adopt self-imposed limitations which are inconsistent with the stated purposes of the legislation under which it operates. *Monroe v. Livingston,* 251 S.C. at 217, 161 S.E.2d at 244. The decision to deny an application to build new facilities any time there are under-utilized existing facilities, irrespective of the effect on health care quality and cost, and regardless of the impracticability of using existing facilities, cannot be legitimized by referring to it as a "policy" decision. In reality, it is a conclusion of fact that existing facilities can feasibly be made available for a new service in a cost effective manner. There simply is no record evidence to support this determination. We therefore conclude the interpretation given by DHEC to its role under the Act violates the statutory provisions by improperly restricting its discretion in contravention of the explicitly stated purposes, resulting in an arbitrary action not rationally supported by the factual findings and conclusions reached.[4]

## II.

It now becomes necessary to fashion the appropriate remedy. The hearing officer made the following alternative recommendation: "In the event the Board of Health and Environmental Control or the courts determine that need may in principle be established in the fashion the respondent advocates, the CON should issue." The Board adopted the findings and recommendations of the hearing officer. Thus, there is no appeal from this conclusion.

The question is to what extent are we required to follow this alternative recommendation. We are, of course, bound by the findings of fact made by the agency which are supported by substantial evidence, but this is a separate analysis from determining the rational basis for the decision.

As we have already determined, the denial of the CON was not rationally based and was, therefore, arbitrary. This same defect vitiates the proposed opposite result. Logically, the failure to consider the relative merits of the proposed service

---

4. Lloyd additionally argues the constitutional issues of substantive due process and equal protection. We find it unnecessary to address them in view of our ruling on the issue of statutory construction.

renders the denial improper, but it does not automatically mean that the proposed facility should be approved as a necessary duplication of existing facilities. DHEC, by its own admission, did not consider the merits of the proposed service. Thus, for us to reach this conclusion would require that we make supporting findings of fact, which we are not permitted to do.

The record provides a factual basis for more than one conclusion. Lloyd acknowledged to the Board that he had performed these endoscopic screening procedures in his office until medical insurance refused to pay for some of the necessary supplies, equipment and nursing staff. The hearing officer found that the service could "in principle" be performed in the office. We are unsure what is meant by the words "in principle" in this context. It is possible the hearing officer meant by them that it was medically possible, but not medically feasible. But if this is the intended meaning, there is no underlying factual support for it in the record or the order.

Conversely, capital expenditure for construction of a separate facility in order to obtain insurance payment for a procedure which can feasibly be done in the physician's office may prove to be the kind of unnecessary expansion targeted by the Act because it typically leads to higher medical costs without gain in quality or access to health care. Therefore, the evidence is susceptible of more than one conclusion on the issues of necessity and feasibility. For this reason, we conclude this case should be remanded to DHEC for a new hearing in which the parties are afforded the opportunity to respond and present evidence and argument on all issues, in accordance with S.C.Code Ann. § 1–23–320 (Supp.1996).

### III.

Lloyd raises one additional issue on appeal which we must address. Lloyd argues the CON should be issued to him because the Board determined additional endoscopic facilities were needed as the basis for issuing a CON to Columbia Endoscopy Center while Lloyd's application was still under review.

Approximately two years after Lloyd filed his application, Columbia Endoscopy Center (Columbia) filed its application

for a CON to build a freestanding ambulatory surgical center for gastrointestinal endoscopy on August 18, 1993.[5] Unlike Lloyd's application, this filing included demographic information; existing and future growth projections for endoscopic procedures and utilization rates; a targeted, underserved, minority segment of the community by physicians who are a part of the minority community; population growth projections; and financial information to allow mathematical analysis of cost-effectiveness and adverse impact on existing facilities.

The Columbia application was treated separately and not as a "competing applicant," since it was not filed within fifteen days after a "Notice of Affected Persons" was published in Lloyd's case.[6] The DHEC staff initially recommended denial of this CON, but on December 30, 1994, a hearing officer concluded Columbia had shown a need for the proposed additional facility. In the exhaustive analysis of the data furnished, the hearing officer employed a mathematical formula to assess utilization and future growth, concluding that by 1994 existing facilities for Richland, Lexington and Fairfield Counties would be at 103% capacity. He also found that the four principle physicians, all of whom are specialists, were members of racial minorities who served a predominantly racial minority patient base, a portion of which had been designated by the State as underserved. Unhappy with the hearing officer's report, DHEC staff applied for Board review. DHEC staff and Columbia then settled the review by entering into a consent agreement on May 24, 1995 by which the Board

---

5. The exact date of filing for Lloyd is not contained in the record, though it is reflected in the hearing officer's report and recommendation as being in 1991.

6. S.C.Code Ann.Regs. 61–15 § 103(6) defines a "competing applicant" as one who files an application for a CON no later than fifteen days after the required Notice of Affected Persons is published in the State Register for one or more applications for similar services and/or facilities in the same service area. Such applications are considered together and compared with each other. Presumably the same assessment information would be available and considered, where applicable, in each competing application. Although the date of publication of Lloyd's Notice to Affected Persons is not contained within the record, that part of the process precedes the Department review. Denial of Lloyd's CON by the DHEC staff after their review occurred initially on February 22, 1992, a year and a half before Columbia's application was accepted for filing.

affirmed the hearing officer's findings of fact and issued the CON to Columbia.

To the extent Lloyd argues the findings in support of Columbia's CON require that Lloyd's CON also be issued, we find the argument to be without merit. Columbia's application was properly treated separately, since it was not a competing application as defined under the Act. Lloyd did not attempt to establish need based upon existing capacity. Nor did he base his application on demographics or a proposal to treat an underserved minority population. The burden of proof was upon Lloyd. He cannot now complain of DHEC's failure to make the same findings of need for expansion based upon the projected increase of endoscopic procedures beyond the capacity of existing facilities since he did not present any evidence to support such a conclusion.

For the foregoing reasons, the matter is reversed and remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

HEARN and STILWELL, JJ., concur.